IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| KAIL MARIE and MICHELLE L. BROWN, and, KERRY WILKS, Ph.D., and DONNA DITRANI,<br>     Plaintiffs,<br><br>v.<br><br>ROBERT MOSER, M.D., in his official capacity as Secretary of the Kansas Department of Health and Environment, and DOUGLAS A. HAMILTON, in his official capacity as Clerk of the District Court for the 7th Judicial District (Douglas County), and BERNIE LUMBRERAS, in her official capacity as Clerk of the District Court for the 18th Judicial District (Sedgwick County),<br><br>     Defendants. | Case No. \_\_\_\_\_ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I. PRELIMINARY STATEMENT

1. Plaintiffs Kail Marie and Michelle Brown, and Kerry Wilks and Donna DiTrani (collectively, "Plaintiffs" or "Plaintiff Couples") are loving, committed same-sex couples. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief for the violation of Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution caused by the exclusion of same-sex couples from the freedom to marry in Kansas.

2. Through Kansas's constitutional and statutory marriage bans and through Defendants' enforcement of those bans, the State generally and Defendants specifically send a purposeful message that they view lesbians, gay men, and their children as second-class citizens who are undeserving of the legal sanction, respect, protections, and support that heterosexuals and their families are able to enjoy through marriage. This discrimination (referred to herein as

the State's "marriage ban") is enshrined both in the State's statutes and Article 15, Section 16 of the Kansas Constitution, which limits marriage to couples composed of "one man and one woman" and declares that "All other marriages . . . to be contrary to the public policy of this state and . . . void." KAN. CONST., art. 15, § 16.

3. Pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution, Plaintiffs bring this action challenging the validity of Kansas's laws prohibiting marriage between two people of the same sex: Article 15, Section 16 of the Kansas Constitution and Kansas Statutes Annotated §§ 23-2501, *et seq.* (2013 Supp.). Plaintiffs seek declaratory and injunctive relief for violations of the Equal Protection and Due Process Clauses of the U.S. Constitution (U.S. CONST. amend. xiv, § 1).

4. Marriage is universally recognized and celebrated as the hallmark of a couple's love for and commitment to one another. When two people marry, they commit personally and publicly to build a life together, and they ask their families, friends, communities, and government to respect, honor, and support that commitment. Marriage has long been recognized and valued for its beneficial contribution to the welfare of society and to individual happiness. Lesbians and gay men in Kansas are denied the freedom afforded to different-sex couples in this State to have their loving, committed relationships recognized through marriage.

5. Plaintiffs seek equal access to marriage as the only means to secure their rights to due process and equal protection of the law and to eliminate the myriad serious harms inflicted on them by the marriage ban and Defendants' enforcement of it. Accordingly, Plaintiffs bring this suit seeking declaratory and injunctive relief on the grounds that Kansas's exclusion of same-sex couples from marriage and Defendants' enforcement of the marriage ban violate the

due process and equal protection guarantees of the Fourteenth Amendment to the United States Constitution.

## II.     PARTIES

Plaintiffs

6.     Kail Marie and Michelle L. Brown are a lesbian couple residing in Lecompton, Douglas County, Kansas. Kail and Michelle have been in a committed, loving relationship with each other for twenty years.

7.     Kerry Wilks, Ph.D., and Donna DiTrani are a lesbian couple residing in Wichita, Kansas, within the District of Kansas. Kerry and Donna have been in a committed, loving relationship with each other for five years.

Defendants

8.     Defendant Robert Moser, M.D., is the Secretary of the Kansas Department of Health and Environment ("KDHE"). Dr. Moser's duties include directing and supervising Kansas's system of vital records and serving as the custodian of its records; directing, supervising, and controlling the activities of all persons pertaining to the operation of the system of vital records. As part of these vital records-related duties, Dr. Moser furnishes forms for the marriage license, marriage certificate, marriage license worksheet, and application for marriage license used throughout the State of Kansas; maintains a publicly available vital records index of marriages; and compiles, publishes, and makes available to the public aggregate data on the number of marriages occurring in the State of Kansas, including the age and race of the spouses, and the number of minor children involved. Dr. Moser must ensure compliance through all of these functions with relevant Kansas laws, including those that currently exclude same-sex couples from marriage. Upon information and belief, this includes furnishing forms that prohibit

same-sex couples from marrying by requiring a "Bride" and a "Groom." Dr. Moser is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. He is sued in his official capacity.

9. Douglas A. Hamilton is the Clerk of the District Court for the 7th Judicial District, also known as the Douglas County District Court, which sits in Lawrence, Kansas. As Clerk, Mr. Hamilton is responsible for the issuance of marriage licenses in Douglas County. Mr. Hamilton's duties include issuing marriage licenses in Douglas County; requiring the parties contemplating marriage to state under oath the information required for the marriage record, and delivering certificates of that information to the parties along with the marriage license; levying and collecting a tax on each marriage license; authorizing qualified ministers to perform marriage rites; filing and preserving the originals and indexing the names of both spouses, upon return of the marriage license and certificate from the officiant; forwarding a record of each marriage to the Kansas Department of Health and Environment; and correcting marriage records as needed. Mr. Hamilton must ensure compliance through all of these functions with relevant Kansas laws, including those that exclude same-sex couples from marriage. Mr. Hamilton is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. He is sued in his official capacity.

10. Defendant Bernie Lumbreras is the Clerk of the District Court for the 18th Judicial District, also known as the Sedgwick County District Court, which sits in Wichita, Kansas. As Clerk, Ms. Lumbreras is responsible for the issuance of marriage licenses in Sedgwick County, Kansas. Ms. Lumbreras's duties include issuing marriage licenses; requiring the parties contemplating marriage to state under oath the information required for the marriage record, and delivering certificates of that information to the parties along with the marriage license; levying

and collecting a tax on each marriage license; authorizing qualified ministers to perform marriage rites; filing and preserving the originals and indexing the names of both spouses, upon return of the marriage license and certificate from the officiant; forwarding a record of each marriage to the Kansas Department of Health and Environment; and correcting marriage records as needed. Ms. Lumbreras must ensure compliance through all of these functions with relevant Kansas laws, including those that exclude same-sex couples from marriage. Ms. Lumbreras is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. She is sued in her official capacity.

### III. JURISDICTION & VENUE

11. This action arises under the Constitution of the United States and the provisions of 42 U.S.C. § 1983. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a), and pursuant to 42 U.S.C. § 1983.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

13. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

### IV. STATEMENT OF FACTS

14. Plaintiff Couples are residents of the State of Kansas who experience the same joys and challenges of family life as their heterosexual neighbors, co-workers, and other community members who may freely marry. Plaintiffs are productive, contributing citizens but must do so without the same legal shelter, dignity, and respect afforded by the State of Kansas to other families through access to the universally celebrated status of marriage. The State's exclusion of Plaintiffs from marriage, and Defendants' enforcement of that exclusion, subjects

Platinffs to an inferior "second class" status relative to the rest of the political community and deprives them of equal dignity, security, and legal protections afforded to other Kansas families.

15. But for the fact that they are couples of the same sex, Plaintiffs are legally qualified to marry under the laws of the State of Kansas, and they wish to marry in Kansas. Each is over the age of 18 and fully competent, and none of the plaintiffs is precluded from marriage as a result of having another spouse or being closely related to her or his partner. Each of the plaintiffs is willing to provide requisite information to receive a marriage license and to pay the required fees. Plaintiffs are able and eager to assume the responsibilities of marriage.

16. On October 8, 2014, Kail Marie appeared in person at the office of the Clerk of the Douglas County District Court, and sought to apply for a marriage license. A deputy clerk working under the supervision of Defendant Hamilton gave Plaintiff Marie an application for a marriage license, which Plaintiff Marie fully completed and returned to the deputy clerk, who then gave Plaintiff Marie a marriage license worksheet and instructed her to return on Tuesday, October 14, 2014.

17. On Thursday, October 9, 2014, the Chief Judge of the Seventh Judicial District issued Administrative Order 14-13, which states that "[t]he court performs an administrative function when it issues a marriage license" and indicated that in exercising that administrative function it is bound to apply and follow existing Kansas laws. The Administrative Order concluded by saying that "[t]he Clerk of the District Court shall not issue a marriage license to these applicants or to any other applicants of the same sex." Thus, it is clear that Plaintiffs' application for a marriage license will be denied because they are a same sex couple.

18. On October 6, 2014, Kerry Wilks and Donna DiTrani appeared in person at the office of the Clerk of the District Court for the 18th Judicial District in Wichita, Kansas, and

6

sought to apply for a marriage license. A deputy clerk and that clerk's supervisor – both of whom work under the supervision of Defendant Lumbreras – refused to give Plaintiffs Wilks and DiTrani an application for a marriage license because she seeks to marry another woman.

19. On October 7, 2014, Kerry Wilks returned to the office of the Clerk of the District Court for the 18th Judicial District in Wichita, Kansas, and sought to apply for a marriage license. Once again, a deputy clerk who works under the supervision of Defendant Lumbreras refused to give Plaintiff Wilks an application for a marriage license because she seeks to marry another woman. In addition, on this occasion, Plaintiff Wilks spoke to Chief Judge Fleetwood, who told her that she could not obtain a marriage license in Kansas to marry another woman.

20. On October 8, 2014, Kerry Wilks again returned to the office of the Clerk of the District Court for the 18th Judicial District in Wichita, Kansas, and sought to apply for a marriage license. Yet again, deputy clerks under the supervision of Defendant Lumbreras refused to give Plaintiff Wilks an application for a marriage license because she seeks to marry another woman.

21. On October 9, 2014, Plaintiffs Wilks and DiTrani returned to the office of the Clerk of the District Court for the 18th Judicial District in Wichita, Kansas, and sought to apply for a marriage license. This time, a deputy clerk gave them an application for marriage license, which they filled out and handed back to the deputy clerk. At that point, however, the deputy clerk – reading from a prepared statement – told Kerry Wilks and Donna DiTrani that their application for a marriage license was denied because same-sex marriages violate provisions of the Kansas Constitution and statutes and that the office of the District Court Clerk for the 18th Judicial District will not issue marriage licenses to same-sex couples until a court rules on the constitutionality of the Kansas constitutional provision and related statutes.

**Kansas Law Singles Out Same-Sex Couples and Excludes Them from Marriage**

22.  Since 1980, the Kansas Legislature has considered and has enacted a series of statutory and constitutional bans designed to exclude same-sex couples from marriage.  These marriage bans cannot be explained by reference to legitimate public policies that could justify the disadvantages the marriage bans impose on same-sex couples.  Rather, the texts and histories of these enactments demonstrate that interference with the equal dignity of same-sex couples was more than a mere side effect of these various enactments – it was their essence.

23.  In 1980, a few years after same-sex couples in other jurisdictions filed the first lawsuits seeking the freedom to marry, the Kansas Legislature for the first time enacted a statutory provision that specifically excluded same-sex couples from marriage.  The new statute limited marriage in Kansas people "who are of opposite sex."

24.  In 1996, the Legislature enacted the "Marriage Protection Act," which declared all marriages other than between a man and a woman void and provided that "[i]t is the strong public policy of this state only to recognize as valid marriages from other states that are between a man and a woman."

25.  In April 2005, the Kansas Constitution was amended to include the following provision: "(a) The marriage contract is to be considered in law as a civil contract. Marriage shall be constituted by one man and one woman only. All other marriages are declared to be contrary to the public policy of this state and are void. (b) No relationship, other than a marriage, shall be recognized by the state as entitling the parties to the rights or incidents of marriage." KAN. CONST. art. 15, § 16.

26.  Thus, in Kansas today, marriage is governed by Chapter 23, Article 25 (Marriage) of the Kansas Statutes Annotated.  Recent amendments to the marriage statutes prohibit marriage for same-sex couples. Specifically, Kansas defines the marriage relationship

"as a civil contract between two parties who are of opposite sex. All other marriages are declared to be contrary to the public policy of this state and are void." Kan. Stat. Ann. § 23-2501.

27. Pursuant to these laws, same-sex couples in Kansas are prohibited from all access to marriage; they can neither marry in Kansas nor have a valid marriage from another jurisdiction recognized in Kansas.

**The Exclusion of Same-Sex Couples from Marriage Inflicts Profound Harms on Plaintiffs**

28. Barring same-sex couples from marriage disqualifies them from critically important rights and responsibilities that different-sex couples rely upon to secure their commitment to each other and to safeguard their families. By way of example only, same-sex couples are denied the ability to solemnize their relationships through state-sacntioned ceremonies and officiants and to inherit property through intestate succession laws and to file joint state tax returns.

29. In addition to the tangible harms listed above, Plaintiffs are denied the unique social recognition that marriage conveys. Without access to the familiar language and legal label of marriage, Plaintiffs are unable instantly or adequately to communicate to others the depth and permanence of their commitment, or to obtain respect for that commitment as others do simply by invoking their married status.

30. The government is a powerful teacher of discrimination to others. By decreeing that the relationships of same-sex couples should be ignored in Kansas and enforcing that policy, the State and Defendants instruct all persons with whom same-sex couples interact that their relationships are less worthy than others. Bearing the imprimatur of the government, the State's statutory and constitutional marriage ban, and Defendants' enforcement of it, communicates a

view that same-sex couples are unfit for the dignity, respect, and stature afforded to different-sex couples, and this encourages others to follow the government's example in discriminating against them.

31. Many private entities defer to the State's and Defendants' conferral of marital status in defining "family" for purposes of an array of important benefits, often resulting in the exclusion of same-sex couples from important safety nets such as private employer-provided health insurance for family members. The State and Defendants also encourage disrespect of committed same-sex couples by others in workplaces, schools, businesses, and other major arenas of life, in ways that would be less likely to occur and more readily corrected if marriage were available to same-sex couples.

**The State's Exclusion Of Same-Sex Couples from Marriage Is Not Even Rationally Related To A Legitimate Governmental Purpose, Let Alone Substantially Related To An Important Government Purpose Or Narrowly Tailored To A Compelling Governmental Purpose**

32. No legitimate, let alone important or compelling, interest exists to exclude same-sex couples from the historic and highly venerated institution of marriage. An individual's capacity to establish a loving and enduring relationship does not depend upon that individual's sexual orientation or sex in relation to his or her committed life partner, nor is there even a legitimate interest in justifying same-sex couples' exclusion from marriage and the spousal protections it provides on such bases.

33. Neither history nor tradition can justify the State's discriminatory exclusion of same-sex couples from marriage. Marriage has remained vital and enduring because of, not despite, its resiliency in response to a dynamic society, as society and the courts have cast off prior restrictions on interracial marriage and coverture. The Constitution is not confined to

historic notions of equality, and no excuse for the State's discriminatory restriction can be found in the pedigree of such discrimination.

34. As the Supreme Court has made clear, the law cannot, directly or indirectly, give effect to private biases. Liberty and equality, not moral disapproval, must be the guiding framework for a state's treatment of its citizens.

35. Excluding same-sex couples from marriage does nothing to protect or enhance the rights of different-sex couples. Different-sex spouses will continue to enjoy the same rights and status conferred by marriage regardless of whether same-sex couples may marry, unimpaired by the acknowledgment that this freedom belongs equally to lesbians and gay men.

## V. CLAIMS FOR RELIEF

**First Claim for Relief: Deprivation of Due Process under U.S. Const. Amend. XIV**

43. Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

44. Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

45. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

46. Kansas Constitution Article 15, § 16, Kansas Statutes Annotated §§ 23-2501 and 23-2508, and all other sources of state law that preclude marriage for same-sex couples or prevent recognition of their marriages violate the due process guarantee of the Fourteenth Amendment both facially and as applied to Plaintiffs.

47. The right to marry the unique person of one's choice and to direct the course of one's life in this intimate realm without undue government restriction is one of the fundamental liberty interests protected by the Due Process Clause of the Fourteenth Amendment. Defendants' actions to enforce the marriage ban directly and impermissibly infringe Plaintiffs' choice of whom to marry, interfering with a core, life-altering, and intimate personal choice. The Due Process Clause also protects choices central to personal dignity and autonomy, including each individual's rights to family integrity and association. Defendants' actions to enforce the marriage ban directly and impermissibly infringe Plaintiffs' deeply intimate, personal, and private decisions regarding family life, and preclude them from obtaining full liberty, dignity, and security for themselves, their family, and their parent-child bonds.

48. As the Secretary of Health and Environment, Defendant Moser's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, furnishing forms for marriage licenses that prohibit same-sex couples from marrying by requiring a "Bride" and a "Groom" violate the Plaintiffs' fundamental right to marry and constitutional rights to liberty, dignity, autonomy, family integrity, association, and due process under the Fourteenth Amendment to the United States Constitution.

49. As Douglas County District Court Clerk, Defendant Hamilton's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, denying same-sex couples marriage licenses, violate the fundamental right to marry and the rights, protected under the Fourteenth Amendment to the United States Constitution, to liberty, dignity, autonomy, family integrity, association, and due process of Kail Marie and Michelle Brown.

50. As Sedgwick County District Court Clerk, Defendant Lumbreras's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example,

denying same-sex couples marriage licenses, violate the fundamental right to marry and the rights, protected under the Fourteenth Amendment to the United States Constitution, to liberty, dignity, autonomy, family integrity, association, and due process of Kerry Wilks and Donna DiTrani.

51. Defendants' actions thus deny and abridge Plaintiffs' fundamental right to marry, and liberty and due process interests in autonomy, and family integrity and association, by penalizing Plaintiffs' self-determination in the most intimate sphere of their lives.

52. Defendants cannot satisfy the Due Process Clause's decree that governmental interference with a fundamental right or liberty interest may be sustained only upon a showing that the burden is narrowly tailored to serve a compelling or even important governmental interest, as the marriage ban is not even tailored to any legitimate interest at all.

**Second Claim for Relief: Deprivation of Equal Protection under U.S. Const. Amend. XIV**

53. Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

54. Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

55. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

56. Kansas Constitution Article 15, § 16, Kansas Statutes Annotated §§ 23-2501 and 23-2508, and all other sources of state law that preclude marriage for same-sex couples or prevent recognition of their marriages violate the equal protection guarantee of the Fourteenth Amendment both facially and as applied to Plaintiffs. Moreover, by enshrining discrimination in

the form of a constitutional amendment, Kansas Constitution Article 15, § 16 deprives lesbian and gay Kansans of equal protection of the laws by locking them out of the political process and making it uniquely more difficult to secure legislation on their behalf.  The conduct of Defendants in enforcing these laws violates the right of Plaintiffs to equal protection by discriminating impermissibly on the basis of sexual orientation and sex.

57. As the Secretary of Health and Environment, Defendant Moser's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, furnishing forms for marriage licenses that prohibit same-sex couples from marrying by requiring a "Bride" and a "Groom" violate the constitutional rights of Plaintiffs to equal treatment.

58. As Douglas County District Court Clerk, Defendant Hamilton's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, denying same-sex couples marriage licenses, violate the constitutional rights to equal treatment of Kail Marie and Michelle Brown.

59. As Sedgwick County District Court Clerk, Defendant Lumbreras's duties and actions to ensure compliance with the State's discriminatory marriage ban by, for example, denying same-sex couples marriage licenses, violate the constitutional rights to equal treatment of Kerry Wilks and Donna DiTrani.

60. The State's marriage ban, and Defendants' actions to enforce it, denies same-sex couples equal dignity and respect, and deprives their families of a critical safety net of rights and responsibilities.  The State's marriage ban brands lesbians and gay men as second-class citizens through a message of government-imposed stigma and fosters private bias and discrimination, by instructing all persons with whom same-sex couples interact, including their own children, that

their relationship is less worthy than others.  The State's marriage ban and Defendants' actions reflect moral disapproval and antipathy toward lesbians and gay men.

61. Same-sex couples such as the Plaintiff Couples are identical to different-sex couples in all of the characteristics relevant to marriage.

62. Same-sex couples make the same commitment to one another as different-sex couples.  Like different-sex couples, same-sex couples fall in love, build their lives together, plan their futures together, and hope to grow old together.  Like different-sex couples, same-sex couples support one another emotionally and financially and take care of one another physically when faced with injury or illness.

63. Plaintiffs seek to marry for the same emotional, romantic, and dignitary reasons, and to provide the same legal shelter to their families, as different-sex spouses.

64. ***Discrimination Based on Sexual Orientation.***  The State's marriage ban targets lesbian and gay Kansans as a class for exclusion from marriage and discriminates against each Plaintiff based on his or her sexual orientation both facially and as applied.

65. The exclusion of Plaintiffs from marriage based on their sexual orientation subjects Defendants' conduct to strict or at least heightened scrutiny, which Defendants' conduct cannot withstand because the exclusion does not even serve any legitimate governmental interests, let alone any important or compelling interests, nor does it serve any such interests in an adequately tailored manner.

66. Lesbians and gay men have suffered a long and painful history of discrimination in Kansas and across the United States.

67. Sexual orientation bears no relation to an individual's ability to perform in or contribute to society.

68. Sexual orientation is a core, defining trait that is so fundamental to one's identity and conscience that a person may not legitimately be required to abandon it (even if that were possible) as a condition of equal treatment.

69. Sexual orientation generally is fixed at an early age and highly resistant to change through intervention. No credible evidence supports the notion that such interventions are either effective or safe; indeed, they often are harmful and damaging. No mainstream mental health professional organization approves interventions that attempt to change sexual orientation, and virtually all of them have adopted policy statements cautioning professionals and the public about these treatments.

70. Lesbians and gay men are a discrete and insular minority, and ongoing prejudice against them continues seriously to curtail the operation of those political processes that might ordinarily be relied upon to protect minorities. Gay people have fewer civil rights protections at the state and federal level than racial minorities and women had when race- and sex-based classifications were declared to be suspect and quasi-suspect, respectively.

71. Lesbians and gay men lack express statutory protection against discrimination in employment, public accommodations, and housing at the federal level and in more than half the states, including the Commonwealth; are systematically underrepresented in federal, state, and local democratic bodies; have been stripped of the right to marry through 30 state constitutional amendments and are currently not permitted to marry in about 30 states; and have been targeted across the nation through the voter initiative process more than any other group.

72. ***Discrimination Based on Sex***. The State's marriage ban discriminates against Plaintiffs on the basis of sex, both facially and as applied, barring Plaintiffs from marriage or from being recognized as validly married, solely because each of the Plaintiffs wishes to marry a

life partner of the same sex.  The sex-based restriction is plain on the face of the State's laws, which restrict marriage to "one man and one woman," Kan. Const. art. 15, § 16, and prohibit marriage or recognition of a marriage that is not between "two parties who are of opposite sex," Kan. Stat. Ann. § 23-2501.

73. Because of these sex-based classifications, Kail Marie is precluded from marrying her devoted life partner because she is a woman and not a man; were Kail a man, she could marry Michelle Brown.   Similarly, Kerry Wilks is precluded from marrying Donna DiTrani.

74. The State's marriage ban also serves the impermissible purpose of enforcing and perpetuating sex stereotypes by excluding Plaintiffs from marriage, or from being recognized as validly married, because Plaintiffs have failed to conform to sex-based stereotypes that men should marry women, and women should marry men.

75. Given that there are no longer legal distinctions between the duties of husbands and wives, there is no basis for the sex-based eligibility requirements for marriage.

76. The exclusion of Plaintiffs from marriage based on their sex and the enforcement of gender-based stereotypes cannot survive the heightened scrutiny required for sex-based discrimination.

77. ***Discrimination With Respect to Fundamental Rights and Liberty Interests Secured by the Due Process Clause***.  The marriage ban discriminates against Plaintiffs based on sexual orientation and sex with respect to the exercise of the fundamental right to marry, and their liberty interests in dignity, autonomy, and family integrity and association.  Differential treatment with respect to Plaintiffs' exercise of fundamental rights and liberty interests, based on their sexual orientation and sex, subjects Defendants' conduct to strict or at least heightened scrutiny, which Defendants' conduct cannot withstand.

**DECLARATORY AND INJUNCTIVE RELIEF**

**28 U.S.C. §§ 2201 and 2202; Federal Rules of Civil Procedure, Rules 57 and 65**

78. Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

79. This case presents an actual controversy because Defendants' present and ongoing denial of equal treatment to Plaintiffs subjects them to serious and immediate harms, warranting the issuance of a declaratory judgment.

80. Plaintiffs seek injunctive relief to protect their constitutional rights and avoid the injuries described above. A favorable decision enjoining Defendants would redress and prevent the irreparable injuries to Plaintiffs identified herein, for which Plaintiffs have no adequate remedy at law or in equity.

81. The State will incur little to no burden in allowing same-sex couples to marry and in recognizing the valid marriages of same-sex couples from other jurisdictions on the same terms as different-sex couples, whereas the hardship for Plaintiffs of being denied equal treatment is severe, subjecting them to an irreparable denial of their constitutional rights. The balance of hardships thus tips strongly in favor of Plaintiffs.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

A. Declaring that the provisions of and enforcement by Defendants of article 15, section 16 of the Kansas Constitution, Kansas Statutes Annotated §§ 23-2501 and 23-2508, and any other sources of state law that exclude same-sex couples from marrying violate Plaintiffs' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution;

B.	Permanently enjoining enforcement by Defendants of article 15, section 16 of the Kansas Constitution, Kansas Statutes Annotated §§ 23-2501 and 23-2508, and any other sources of state law to exclude same-sex couples from marriage;

C.	Requiring Defendants in their official capacities to permit issuance of marriage licenses to same-sex couples to marry, pursuant to the same restrictions and limitations applicable to different-sex couples' freedom to marry, and to recognize marriages validly entered into by Plaintiffs;

D.	Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and

E.	Granting such other and further relief as the Court deems just and proper.

F.	The declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Kansas City as the place of trial in this action.

Respectfully submitted,

/s/ Stephen Douglas Bonney
Stephen Douglas Bonney (#12322)
ACLU Foundation of Kansas
3601 Main Street
Kansas City, Missouri 64111
(816) 994-3311
(816) 756-0136-fax
dbonney@aclukswmo.org

Mark P. Johnson, KS Bar #22289
Denton US, LLP
4520 Main Street
Suite 1100
Kansas City, MO  64111
816/460-2400
816/531-7545 (fax)
Mark.johnson@dentons.com

Joshua A. Block [motion for pro hac vice to be filed]
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2593
jblock@aclu.org

ATTORNEYS FOR PLAINTIFFS

20