### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### KANSAS CITY DIVISION

| | |
|---|---|
| KAIL MARIE and MICHELLE L. BROWN, and KERRY WILKS, Ph.D., and DONNA DITRANI,<br>     Plaintiffs,<br><br>v.<br><br>ROBERT MOSER, M.D., in his official capacity as Secretary of the Kansas Department of Health and Environment, and<br>DOUGLAS A. HAMILTON, in his official capacity as Clerk of the District Court for the 7th Judicial District (Douglas County), and<br>BERNIE LUMBRERAS, in her official capacity as Clerk of the  District Court for the 18th Judicial District (Sedgwick County),<br>     Defendants. | Case No. 14-cv-2518 |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Introduction

This is a civil rights action for injunctive and declaratory relief seeking to declare unconstitutional and enjoin Defendants from enforcing Article 15, § 16 of the Kansas Constitution, Kansas Statutes Annotated §§ 23-2501 and 23-2508, and any other Kansas statute, law, policy, or practice that excludes Plaintiffs and other same-sex couples from marriage.  Simply put, "A state may not deny the issuance of a marriage license to two persons, or refuse to recognize their marriage, based solely upon the sex of the persons in the marriage union." *Kitchen v. Herbert*, 755 F.3d 1193, 1199 (10th Cir.), *cert. denied*, 83 U.S.L.W. 3102 (U.S. Oct. 6, 2014).

In direct violation of the United States Constitution, the Kansas Constitution declares that "Marriage shall be constituted by one man and one woman only. All other marriages are declared to be contrary to the public policy of this state and are void." KAN. CONST. art. 15, § 16. S*ee also* Kan. Stat. Ann. §§ 23-2501 and 23-2508. Pursuant to these laws, Defendants are refusing to issue marriages licenses to same-sex couples based solely on the sex of the persons they wish to marry.

The Tenth Circuit held in *Kitchen* and *Bishop v. Smith*, 760 F.3d 1070 (10th Cir.), *cert denied*, 83 U.S.L.W. 3102 (U.S. Oct. 6, 2014), that virtually identical marriage bans in Utah and Oklahoma violated the Fourteenth Amendment. But despite this binding precedent, Defendants have indicated that they will continue to enforce Kansas's unconstitutional marriage bans until a court enjoins them from doing so. Plaintiffs accordingly seek a temporary restraining order and preliminary injunction to force Defendants to comply with the Fourteenth Amendment in conformance with binding Tenth Circuit precedent.

Pursuant to Fed. R. Civ. P. 65(a) and (b), Plaintiffs have moved for a preliminary injunction and a temporary restraining order (1) enjoining Defendants and their officers, employees, and agents from enforcing Article 15, § 16 of the Kansas Constitution, Kansas Statutes Annotated §§ 23-2501 and 23-2508, and any other sources of state law that preclude same-sex couples from marriage and (2) requiring Defendants and their officers, employees, and agents in their official capacities to permit issuance of marriage licenses to same-sex couples, pursuant to the same restrictions and limitations applicable to different-sex couples' freedom to marry, and to recognize marriages validly entered into by Plaintiffs.

Facts

Plaintiffs are two same-sex couples who wish to marry in Kansas. *See* Declaration of Kail Marie, ¶ 3; Declaration of Michelle L. Brown, ¶ 3; Declaration of Kerry Wilks, Ph.D., ¶ 3; and Declaration of Donna DiTrani, ¶ 3.  Plaintiffs meet all of the requirements Kansas imposes for the issuance of a marriage license except that they want to marry a person of the same sex. *Id*., , ¶ 4.

On October 8, 2014, Kail Marie appeared in person at the office of the Clerk of the Douglas County District Court, and submitted a fully executed application for a marriage license to a deputy clerk. Declaration of Kail Marie, ¶ 5.  On Thursday, October 9, 2014, Chief Judge Robert W. Fairchild of the Seventh Judicial District issued Administrative Order 14-13, which states that "[t]he court performs an administrative function when it issues a marriage license" and indicates that in exercising that administrative function it is bound to apply and follow existing Kansas laws. *See* Admin. Ord. 14-13 re Same-sex Marriage License Applications, available at http://www.douglas-county.com/district_court/docs/pdf/adminorder_14-13.pdf.  The Administrative Order concludes by saying that "[t]he Clerk of the District Court shall not issue a marriage license to these applicants or to any other applicants of the same sex." *Id*.  Thus, it is clear that Plaintiff Marie's application for a marriage license will be denied because she seeks to marry a woman, Plaintiff Michelle Brown.

On October 9, 2014, Plaintiffs Wilks and DiTrani submitted a fully executed application for a marriage license to a deputy clerk at the office of the Clerk of the District Court for the 18th Judicial District in Wichita, Kansas. Declaration of Kerry Wilks, Ph.D., ¶ 5; and Declaration of Donna DiTrani, ¶ 5.  At that point, the deputy clerk – reading from a prepared statement – told Plaintiffs Wilks and DiTrani that their application for a marriage license was denied because

same-sex marriages violate provisions of the Kansas Constitution and that the office of the District Court Clerk for the 18th Judicial District will not issue marriage licenses to same-sex couples until a court rules otherwise. *Id.*

### Argument

On June 25, 2014, the Tenth Circuit held that state laws that treat same-sex couples differently from opposite-sex couples for purposes of marriage violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. *Kitchen*, 755 F.3d at 1229-30. Although *Kitchen* concerned the laws and practices of the State of Utah, the Tenth Circuit was explicit that its holding applied not only to the Utah law in question, but also to "similar statutory enactments," such as the Kansas laws at issue in this case. *Id.* at 1230. On July 18, 2014, the Tenth Circuit likewise held that Oklahoma's prohibition of marriage for same-sex couples violated the principles of due process and equal protection, concluding that "states may not, consistent with the United States Constitution, prohibit same-sex marriages." *Bishop*, 760 F.3d at 1082.

The state defendants in both *Kitchen* and *Bishop* filed petitions for writs of certiorari in the United States Supreme Court. On October 6, 2014, the United States Supreme Court denied both petitions, along with petitions seeking to overturn similar decisions by the Fourth and Seventh Circuits. *See Rainey v. Bostic*, 83 U.S.L.W. 3102 (U.S. Oct. 6, 2014); *Bogan v. Baskin*, 83 U.S.L.W. 3127 (U.S. Oct. 6, 2014). The Tenth Circuit issued its mandate in both *Kitchen* and *Bishop the* same day. *See Kitchen v. Herbert*, 2014 WL 4960471 (10th Cir. Oct. 6, 2014); *Bishop v. Smith*, 2014 WL 4960523 (10th Cir. Oct. 6, 2014). The Tenth Circuit's holding that "under the Due Process and Equal Protection Clauses of the United States Constitution, those who wish to marry a person of the same sex are entitled to exercise the same fundamental right as is recog-

nized for persons who wish to marry a person of the opposite sex," is now the law of the land in Kansas. *Kitchen*, 755 F.3d at 1229-30.

Despite this binding precedent, Defendants Hamilton and Lumbreras refuse to issue marriage licenses to otherwise-qualified same-sex couples in Douglas and Sedgwick Counties without direction from the courts. Other county clerks also are awaiting instruction from the courts before issuing marriage licenses to same-sex couples. *See, e.g.*, *Same-sex Marriage in Limbo in Kansas – All but one of 105 counties refusing to issue marriage licenses* (Heather Hollingsworth, Associated Press, Oct. 9, 2014), http://cjonline.com/news/2014-10-09/same-sex-marriage-limbo-kansas. In addition, on Friday, October 10, 2014, Kansas Attorney General Derek Schmidt filed a petition with the Kansas Supreme Court seeking a writ of mandamus to stop the Johnson County District Court from issuing marriage licenses to same-sex couples. Petition for Writ of Mandamus, *State of Kansas ex rel. Schmidt v. Moriarty*, Case No. 112,590 (Kan., filed Oct. 10, 2014) available at http://www.kscourts.org/State_v_Moriarty/State%20v%20Moriarty%20Petition.pdf. That same day, the Kansas Supreme Court granted a temporary stay of the Johnson County District Court's Administrative Order 14-11, which had instructed the district court clerk's office to allow same-sex couples to apply for marriage licenses and to obtain such licenses if otherwise qualified under Kansas law. *State of Kansas ex rel. Schmidt v. Moriarty*, Case No. 112,590 (Kan., filed Oct. 10, 2014) available at http://www.kscourts.org/State_v_Moriarty/112590.pdf. The Kansas Supreme Court also established a briefing schedule and set a hearing for November 6, 2014. *Id.*

Plaintiffs seek a preliminary injunction and temporary restraining order requiring the Defendants to allow same-sex couples to marry and to issue marriage licenses to otherwise-qualified same-sex couples. A movant is entitled to a preliminary injunction if the movant can

establish the following: (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest. *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012). For injunctions seeking mandatory relief, the movant must make a "strong showing" with regard to the likelihood of success on the merits and with regard to the balance of harms. *Id*. In light of binding precedent from *Kitchen* and *Bishop*, Plaintiffs easily meet these requirements.

I.  *Plaintiffs Have Made a Strong Showing They Are Substantially Likely To Succeed On The Merits*.

"State laws . . . regulating marriage, of course, must respect the constitutional rights of persons." *United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013). Plaintiffs' request for injunctive relief seeks from the Court only what *Kitchen* expressly holds: "A state may not deny the issuance of a marriage license to two persons, or refuse to recognize their marriage, based solely upon the sex of the persons in the marriage union." *Kitchen*, 755 F.3d at 1199. The Tenth Circuit's decision is binding on this Court. *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10thCir. 1990) ("A district court must follow the precedent of this circuit"); *Phillips v. Moore*, 164 F. Supp. 2d 1245, 1258 (D. Kan. 2001) ("The [district] court, of course, is bound by circuit precedent") (citing *Spedalieri)*.

In light of *Kitchen* and *Bishop*, the outcome of this case is a foregone conclusion. Because the Kansas laws and practices in question have virtually identical scopes and effects to those overturned in *Kitchen*, the Kansas provisions are also unconstitutional. *See Kitchen*, 755 F.3d at 1230 (holding that both state constitutional amendments and "similar statutory enactments" limiting marriage to opposite-sex couples violate the Equal Protection and Due Process

6

Clauses). As was also true of the Oklahoma marriage ban struck down by the Tenth Circuit, in this case the Court's "merits disposition is governed by [the] ruling in *Kitchen*." *Bishop*, 760 F.3d at 1074. Because Kansas's statutory definition of marriage and refusal to recognize the valid marriages of same-sex couples do precisely what the Tenth Circuit held to be unconstitutional, there is an overwhelming probability that Plaintiffs will prevail on the merits.

II.     *Plaintiffs Will Suffer Irreparable Harm If A Preliminary Injunction Does Not Issue*.

There is no question that Plaintiffs suffer irreparable harm every day that Kansas's unconstitutional marriage bans remain in force. Deprivation of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Awad*, 670 F.3d at 1131 ("Furthermore, when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citation omitted); *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) ("[W]hen reviewing a motion for preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."); *Quinly v. City of Prairie Village*, 446 F.Supp.2d 1233, 1237-38 (D. Kan. 2006) (same).

Aside from the unquestionable irreparable harm suffered by Plaintiffs due to the Defendants' refusal to allow Plaintiffs to enjoy the fundamental right to marry their partners, Kansas's treatment of Plaintiffs' relationships as lesser than the relationships of opposite-sex couples who are married or want to become married stigmatizes and demeans them, causes them anxiety and stress, and harms their dignity as individuals and as couples. As recognized by the Tenth Circuit, laws that treat same-sex couples as lesser than opposite-sex couples for purposes of marriage "impose[] a disadvantage, a separate status, and so a stigma upon all who enter into same-sex marriages." *Kitchen*, 755 F.3d at 1207 (quoting *Windsor*, 133 S. Ct. at 2963). Laws that discrim-

inate against same-sex couples undermine "both the public and private significance" of same-sex couples' relationships by telling those couples, and all the world, that their marriages are unworthy of recognition. *Kitchen*, 755 F.3d at 1207 (quoting *Windsor*, 133 S. Ct. at 2964). Such laws "'humiliate[] tens of thousands of children now being raised by same-sex couples' by making 'it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives.'" *Kitchen*, 755 F.3d at 1207 (quoting *Windsor*, 133 S. Ct. at 2964). With the passage of each day, these harms accumulate. The United States Supreme Court "has long recognized that marriage is the 'most important relation in life.'" *Kitchen*, 755 F.3d at 1209 (quoting *Maynard v. Hill*, 125 U.S. 190, 205 (1888)). The harms to Plaintiffs' dignity that result from being deprived of this most important relation should be considered particularly irreparable because they cannot be adequately compensated for in the form of monetary damages. *See Awad*, 670 F.3d at 1131; *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1251 (10th Cir. 2001). To continue to deny Plaintiffs the enjoyment and benefits of one of the most important liberties in life is to continue to irreparably harm them.

III.     *The Harm To Plaintiffs Substantially Outweighs Any Harm To The Defendants*.

The balance of harms tips decidedly in favor of Plaintiffs. Under binding Tenth Circuit precedent Kansas's marriage bans are unconstitutional, and it is well established that "when a law is likely unconstitutional, the interests of those the government represents, such as voters do not outweigh a plaintiff's interest in having its constitutional rights protected." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc) (plurality) (quoting *Awad*, 670 F.3d at 1131), *aff'd*, 134 S. Ct. 2751 (2014). Thus, "if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary

injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589–90 (7th Cir. 2012). *See also Quinly*, 446 F.Supp.2d at 1237 (quoting *Alvarez*).

Before the Supreme Court denied petitions for *certiorari* in *Kitchen*, *Bishop*, and similar cases from the Fourth and Seventh Circuits, some courts had denied preliminary relief or stayed enforcement of injunctions to prevent confusion that would ostensibly result if a state were forced to allow same-sex couples to marry pursuant to a lower court judgment that was subsequently reversed on appeal, *Kitchen*, 755 F.3d at 1230 (staying mandate pending disposition of petition for *certiorari*). But the Supreme Court's decision on October 6 to deny *certiorari* and allow the lower courts' judgments to go into effect demonstrates that such stays are no longer warranted. If the Supreme Court merely wanted to delay review until a circuit split arises, the Supreme Court could have simply "held" the petitions and not taken any action on them until it was prepared to grant *certiorari* in a case raising this issue. Instead, the Supreme Court denied review outright, sending a strong signal that any remaining doubt about the Supreme Court's ultimate resolution of the legal issue does not justify continuing to deny same-sex couples the freedom to marry.

IV. *Injunctive Relief Is In The Public Interest.*

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby*, 723 F.3d at 1145 (quoting *Awad*, 670 F.3d at 1131-32). "While the public has an interest in the will of the voters being carried out . . . the public has a more profound and long-term interest in upholding an individual's constitutional rights." *Awad*, 670 F.3d at 1132. Accordingly, the relief requested serves the interest of the Plaintiffs, the Defendants and other district court clerks, and the People of Kansas.

9

V.     *A Temporary Restraining Order Is Warranted In This Case*.

A party who is entitled to injunctive relief may also seek a temporary restraining order upon a summary showing of immediate and irreparable injury. Given the constitutional magnitude of the issues at stake for the Plaintiffs in this case, the irreparable nature of the injuries to the Plaintiffs, and the high likelihood of success on the merits, Plaintiffs respectfully request that the Court issue a temporary restraining order, for the maximum allowable time period under Fed. R. Civ. P. 65, requiring Defendants to issue or permit issuance of marriage licenses to same-sex couples, including the Plaintiffs, pursuant to the same restrictions and limitations applicable to opposite-sex couples, and without regard to the gender or sexual-orientation of the applicants.

## CONCLUSION

Plaintiffs are overwhelmingly likely to succeed on the merits of their constitutional claims and are suffering significant and irreparable harm every day that Kansas excludes them from marriage. The balance of equities strongly favors an injunction, and an injunction is in the public interest. Accordingly, Plaintiffs respectfully request that the Court issue a preliminary injunction: (1) enjoining Defendants and their officers, employees, and agents from enforcing article 15, §16 of the Kansas Constitution, Kansas Statutes Annotated §§ 23-2501 and 23-2508, and any other sources of state law to exclude same-sex couples from marriage, and (2) requiring Defendants and their officers, employees, and agents in their official capacities to permit issuance of marriage licenses to same-sex couples, pursuant to the same restrictions and limitations applicable to different-sex couples' freedom to marry, and to recognize marriages validly entered into by Plaintiffs.

Plaintiffs request such injunction remain in effect until entry of final judgment in this action. Plaintiffs further request a temporary restraining order as set forth above.

Respectfully submitted,

/s/ Stephen Douglas Bonney
Stephen Douglas Bonney, KS Bar No. 12322
ACLU Foundation of Kansas
3601 Main Street
Kansas City, MO 64111
Tel. (816) 994-3311
Fax: (816) 756-0136
dbonney@aclukansas.org

Mark P. Johnson, KS Bar #22289
Dentons US, LLP
4520 Main Street
Suite 1100
Kansas City, MO  64111
816/460-2400
816/531-7545 (fax)
Mark.johnson@dentons.com

Joshua A. Block [motion for pro hac vice to be filed]
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2593
jblock@aclu.org

ATTORNEYS FOR PLAINTIFFS

Certificate of Service

I certify that, on October 13, 2014, the foregoing document was served by e-mail on the following: Jeffrey A. Chanay, Chief Deputy Attorney General for the State of Kansas, jeff.chanay@ksag.org; Defendant Douglas A. Hamilton, Clerk of the Douglas County District Court, dhamilton@douglas-county.com; and Defendant Bernie Lumbreras, Clerk of the Sedgwick County District Court, blumbrer@dc18.org.

/s/ Stephen Douglas Bonney

11