## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KAIL MARIE and MICHELLE L. BROWN,  )
and KERRY WILKS, Ph.D and DONNA   )
DITRANI,                          )
                     Plaintiffs,  )
v.                                )          Case No. 14-cv-2518-DDC-TJJ
                                  )
ROBERT MOSER, M.D. in his official capacity )
as Secretary of the Kansas Department of Health )
and Environment and               )
DOUGLAS A. HAMILTON, in his official )
capacity as Clerk of the District Court for the 7th )
Judicial District (Douglas County) )
and BERNIE LUMBRERAS in her official )
capacity as Clerk of the District Court for the 18th )
Judicial District (Sedgwick County), )
                                  )
                     Defendants.  )

### RESPONSE OF DEFENDANT MOSER IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTON

The Court should deny plaintiffs' motion for a temporary restraining order or preliminary injunction. Injunctive relief directed at these defendants will not redress plaintiffs' grievances, which cannot be avoided by performance of a licensed marriage ceremony that Kansas officials are required to ignore. Because Kansas law considers same-sex marriages to be legally void and unenforceable only a final judgment binding on all Kansas officials can provide plaintiffs with anything more than the appearance of marriage. The relief requested against Defendants Hamilton and Lumbreras is beyond the Court's subject matter jurisdiction because it is sought against state judicial officers, who are exempt from preliminary injunctive relief under the plain language of 42 U.S.C. §1983, *Buchheit v. Green*, 705 F.3d 1157 (10th Cir. 2012), and *Knox v. Bland*, 632 F.3d 1290 (10th Cir. 2011).

1

There is not even a remote possibility of success on the merits on plaintiffs' claim for relief against Kansas Department of Health and Environment Secretary Moser, whose sole involvement in the process of solemnizing marriage is to provide license forms and to oversee collection of statistics relating to marriages once they have been performed. No case anywhere in the country, state or federal, has held, implied, or suggested that the use of the terms 'bride' and 'groom' on marriage licenses violates constitutional rights. Plaintiffs cite no such case.

Plaintiffs lack standing to sue Secretary Moser, who is not a proper party defendant in this lawsuit under the analysis followed in ***Bishop v. Oklahoma***, 333 Fed. Appx. 361, 2009 WL 1566802 (10th Cir. 2009) and ***Bishop v. Smith***, 760 F.3d 1070 (2014). As an executive officer appointed as per K.S.A. 2014 Supp. 75-5601, Secretary Moser has no supervisory authority over the judicial officials who would be called upon in appropriate cases to enforce the asserted rights of same-sex couples. As the records custodian for marriage certificates, he has insufficient involvement in the issuance of marriage licenses to be a defendant amenable to suit under the Eleventh Amendment. See ***Peterson v. Martinez***, 707 F.3d 1197 (10th Cir. 2013) and ***American Tradition Institute v. Colorado***, 876 F.Supp.2d 1222 (10th Cir. 2012). Judicial officers are not employees, agents, or subordinates of the Kansas Department of Health and Environment, an executive agency, but rather are part of the Kansas Judicial Branch and subject to its supervision and control.

Every federal court that has either granted a preliminary injunction or a judgment on the merits in a same-sex marriage case has stayed the effect of that decision to permit exhaustion of appeal rights. The standard for granting a stay to permit an appeal to proceed is substantially the same as the standard for denying a preliminary injunction outright. No purpose is served by

nominally granting a preliminary injunction that is then given no effect, other than the procedural delay inherent in the process of appealing from the injunction.

Federal courts are courts of limited jurisdiction. The United States Supreme Court reminded all federal courts in **United States v. Windsor**, __U.S.__, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) that the states have exclusive control over domestic relations issues including the determination of marital status and that there must be no federal law dictating the definition of marriage, by striking down §3 of the Defense of Marriage Act as an improper intrusion on the power of the states to define marital status and to grant a liberty right to marry to same-sex couples under state law. As the Supreme Court emphasized in that case, neither Congress nor the federal courts have the authority to contradict state laws defining marital status. This Court should therefore decline jurisdiction and abstain from deciding these issues, particularly on the basis of the limited record available to this Court on this request for a temporary restraining order.

Federal courts have no jurisdiction to grant mandamus relief directed at state court judges, which is what plaintiffs must have if they are to achieve the goal they desire. Without that relief no same-sex couple can achieve the legally enforceable status of marriage, which requires more in Kansas than a piece of paper, a ritual, and a notation in the vital statistic records. Indeed, in Kansas a license is not necessary to achieve a lawful marriage and thus compelling issuance of a license – the only relief possible as plaintiffs have postured their case – will not alter the legal *status quo* in Kansas, namely that the state Constitution, statutes and common law all render marriages between same sex couples null and void. Kansas law recognizes common law marriages, which dispense entirely with the requirement of a marriage license, a formal ceremony, and registration. The availability of common law marriage demonstrates the irrelevance of the actions of the named

defendants with regard to issuance of a marriage license in determining whether the Kansas constitutional provision, statutes and common law that bar legal recognition of same sex marriages remain enforceable. Because there is nothing that two district court clerks and the Secretary of KDHE can do that would create the legally enforceable marriages that plaintiffs desire even if they do everything this Court could possibly order them to do, the request for a temporary restraining order or preliminary injunction must be denied.

Kansas' prohibition of same-sex marriages is constitutionally permissible by reason of the final judgment entered in the case of *In re Estate of Gardiner*, 273 Kan. 191, 42 P.3d 120, *cert. denied sub nom Gardiner v. Gardiner*, 537 U.S.825, 123 S.Ct. 113, 154 L.Ed.2d 36 (2002). This Court is obligated to give full faith and credit to that decision by reason of 28 U.S.C. § 1738 unless and until the United States Supreme Court issues a decision reversing it either expressly or impliedly. No decision of the Tenth Circuit Court of Appeals has achieved that reversal. *Gardiner* is still controlling law in Kansas. *Gardiner* illustrates that the fact that a couple gets a marriage license does not mean that the marriage is recognized as valid in Kansas.

## PROCEDURAL BACKGROUND

Plaintiffs are two pairs of same-sex prospective marriage applicants residing in two Kansas counties seeking to compel two Kansas court clerks to issue marriage licenses to them despite Kansas laws prohibiting that result. They have also sued Secretary Robert Moser of the Kansas Department of Health and Environment ("KDHE"), seeking to compel him to expunge references to brides and grooms from the marriage license forms issued in Kansas. Defendants have not yet responded to the Complaint.

4

The Complaint alleges federal question jurisdiction arising from 42 U.S.C. § 1983, premised upon alleged violations of plaintiffs' equal protection and due process rights under the 14th Amendment. (Doc. 1, ¶¶ 1, 3, and 11). Plaintiff Marie alleges that she filled out an application for a marriage license for herself and plaintiff Brown at the Douglas County District Court but issuance of the license was denied pursuant to an administrative order of the Chief Judge of the Seventh Judicial District that directs the court clerk not to issue licenses to applicants of the same sex. (Doc. 1, ¶¶ 16-17) Plaintiffs Wilks and DiTrani allege that they sought to obtain a marriage license from a deputy clerk at the Sedgwick County District Court but were denied an application because they were a same-sex couple. (Doc. 1, ¶18) Plaintiff Wilks alleges that she returned the next day and spoke with Chief Judge Fleetwood of the 18th Judicial District, who informed her in substance that Kansas law does not allow the issuance of marriage licenses to same-sex couples. (Doc. 1, ¶19) Through persistence plaintiff Wilks and DiTrani finally obtained an application form but were advised by court staff that no license would be issued "until a court rules on the constitutionality of the Kansas constitutional provision and related statutes [prohibiting same-sex marriage]." (Doc. 1, ¶¶ 20-21).

Plaintiffs have filed a motion seeking a temporary restraining order/preliminary injunction compelling defendants and their "officers, agents, and employees acting in their official capacities" to "permit issuance of marriage licenses to same-sex couples . . . and to recognize marriages validly entered into by plaintiffs." (Doc. 3, p. 1, ¶ 1)

The Complaint recites that plaintiffs Marie and Brown have been in a stable relationship with one another for twenty years and that plaintiffs Wilks and DiTrani have been in a stable relationship with one another for five years. (Doc. 1, ¶¶ 6 and 7) The Complaint does not allege

5

that either couple has pursued litigation to challenge Kansas' marriage laws prior to October, 2014. The motion does not explain why plaintiffs' marital status is now a matter of urgent concern to them, more than it would have been at any earlier moment in their relationships. Neither the Complaint nor the motion explains why plaintiffs have not already entered into common law marriages or how the relief sought against the three named defendants would in any way affect their legal ability to do so. The harms asserted by plaintiffs include social stigma and perceived lack of dignity, as well as the inability to file tax returns as married persons. (Doc. 1, ¶¶ 28-31) The Complaint does not describe what effort, if any, these plaintiffs have made to bring these harms to the attention of the named defendants, nor does it explain how the named defendants' actions could avoid the alleged harms. The motion does not explain how the issuance of marriage licenses to plaintiffs will alleviate these alleged harms.

## PARALLEL LITIGATION BEFORE THE KANSAS SUPREME COURT

There is a pending legal proceeding concerning the issues raised in the Complaint. In *State of Kansas ex rel. Schmidt v. Moriarty*, No. 112,590, a case filing which preceded the filing of this case, the Kansas Supreme Court accepted jurisdiction of a mandamus proceeding against Chief Judge Moriarty of the Tenth Judicial District challenging his administrative authority to order issuance of marriage license to same-sex applicants in Johnson County, Kansas. The mandamus action will be briefed later this month and will be argued on November 6, 2014. Based on the issues to be briefed in the mandamus proceeding, it appears that the Kansas Supreme Court may decide what effect recent Tenth Circuit Court of Appeals precedents should have on Kansas marriage laws. The Kansas Supreme Court has issued an order prohibiting the issuance of marriage licenses to same-sex couples until it decides the mandamus case against Chief Judge

Moriarty. A certified copy of the Supreme Court's October 10, 2014 Order in *State ex rel. Schmidt v. Moriarty,* is attached hereto and is subject to judicial notice as per Fed. R. Evid. 201. The Order and information about the proceeding are also available on the Internet. *See* http://www.kscourts.org/Cases-and-Opinions/opinions/SupCt/2014/20141010/112590.pdf

## KANSAS LAW

A resolution of the plaintiffs' motion for temporary restraining order requires an understanding of the substance, procedures, and administration of Kansas marriage laws. Kansas has never recognized same-sex marriages, a practice unknown to English common law, which K.S.A. 77-109 declares to be the law of Kansas until it is modified by statute or judicial precedent.

The present version of the controlling Kansas marriage statutes appear at K.S.A. 2014 Supp. 23-2501 *et seq.*:

- K.S.A. 2014 Supp. 23-2501 expressly restricts marriage to pairs of persons of opposite sex, and declares all other purported marriages to be void as against public policy.

- K.S.A. 2014 Supp. 23-2502 declares the recognition of common law marriages and expressly confines those unions to marriages between persons who are at least18 years of age, but this section makes no express reference to the sex of the parties.

- K.S.A. 2014 Supp. 23-2503 declares incestuous marriages to be void and defines the degree of relationship that would constitute an incestuous marriage. K.S.A. 2014 Supp. 23-2504 identifies the persons authorized to officiate over ceremonial marriages, and permits the parties to dispense with officiation entirely.

- K.S.A. 2014 Supp. 23-2505 authorizes district court clerks and district court judges to issue marriage licenses, and sets out the recommended language for the license itself. Clerks and

7

judges are empowered to confirm under oath that the applicants are old enough to satisfy the law, but no process for confirming the sex of the applicants is mentioned. It gives the KDHE secretary no role in this inquiry.

- K.S.A. 2014 Supp. 23-2506 authorizes the use of a marriage license to change the name of either party to the marriage.

- K.S.A. 2014 Supp. 23-2507 requires the registration of all marriages "under the supervision of the secretary of health and environment as provided in K.S.A. 65-102." K.S.A. 65-102 directs the KDHE secretary to prepare the blank forms used to gather vital statistics related to marriage. It gives the KDHE secretary no supervisory authority over decisions concerning denial of applications.

- K.S.A. 2014 Supp. 23-2508 states the public policy of Kansas concerning recognition of marriages entered into outside the state.

- K.S.A. 2014 Supp. 23-2509 directs the secretary of health and environment to supply marriage certificate forms and describes how the forms are to be used in recording marriages. It gives the KDHE secretary no supervisory authority over court personnel.

- K.S.A. 2014 Supp. 23-2510 imposes a license fee and directs where the fees are to go after they are collected.

- K.S.A. 2014 Supp. 23-2511 instructs those who officiate over marriages and the staff of the court clerk what to do with marriage certificates after the ceremony has been performed.

- K.S.A. 2014 Supp. 23-2512 directs the KDHE secretary to maintain indexed records of marriages and to provide certified copies when requested. It gives the KDHE secretary no authority over court personnel.

8

- K.S.A. 2014 Supp. 23-2513 imposes a criminal fine on persons obligated to process marriage certificates who fail to obey the preceding laws.

- K.S.A. 2014 Supp. 23-2514 directs judges and clerks to maintain copies of marriage licenses issued by them. It gives the KDHE secretary no authority over court personnel.

- K.S.A. 2014 Supp. 23-2515 requires that judges and clerks obtain a sworn statement from applicants confirming that the requirements of K.S.A. 23-2503 are satisfied, and imposes a criminal penalty if no such sworn statement is obtained. This statute does not expressly require a sworn statement that all the requirements of K.S.A. 23-2501 are also satisfied. It gives the KDHE secretary no role in this inquiry.

- K.S.A. 2014 Supp. 23-2516 validates described classes of marriage that otherwise might not comply with the strict letter of the law.

- K.S.A. 2014 Supp. 23-2517 imposes a criminal penalty on any unauthorized person who officiates over a marriage.

- K.S.A. 2014 Supp. 23-2518 makes the copies of marriage documents kept by the court admissible in evidence.

These statutes conform to the requirements of Article 15, § 16 of the Kansas Constitution:

§ 16. Marriage

(a) The marriage contract is to be considered in law as a civil contract. Marriage shall be constituted by one man and one woman only. All other marriages are declared to be contrary to the public policy of this state and are void.

(b) No relationship, other than a marriage, shall be recognized by the state as entitling the parties to the rights or incidents of marriage.

The Kansas statutory provisions relating to the sex of applicants for marriage licenses have not changed in substance since the case of *In re Estate of Gardiner*, 273 Kan. 191, 42 P.3d 120, *cert. denied sub nom Gardiner v. Gardiner*, 537 U.S.825, 123 S.Ct. 113, 154 L.Ed.2d 36 (2002) was decided. No Kansas appellate case has addressed the validity of a purported common law marriage between persons of the same sex, either before or after the *Gardiner* decision and the subsequent passage of the constitutional amendment that produced Article 15, § 16 of the Kansas Constitution. The parties to the *Gardiner* case did not contend that a valid common law marriage was present even if no legally enforceable ceremonial marriage had occurred, so the question was not decided there.

## ARGUMENT AND AUTHORITIES

The Court has requested briefs concerning the issues of standing, *Younger* abstention, and *Pullman* abstention. Along with those issues this brief will briefly address issues of subject matter jurisdiction and the substantive principles of law governing authority to grant injunctive relief. Some of these same issues may also be addressed at greater length in a motion to dismiss when it comes time for defendants to file their responsive pleadings on the merits. This brief addresses only the effect of those issues on the propriety of the provisional remedy sought by the present motion.

## 1. NEITHER INJUNCTIVE NOR DECLARATORY RELIEF IS AVAILABLE AGAINST THESE DEFENDANTS.

No preliminary relief is proper if subject matter jurisdiction over the merits is doubtful. Federal courts lack the authority to compel state court officials to reconsider official actions they have previously refused to take. Eleventh Amendment immunity will apply even if the injunction

10

would otherwise provide relief for the harm resulting from an allegedly unconstitutional refusal to act.

Similar claims were made against the clerk of the Kansas Supreme Court in ***Buchheit v. Green***, 705 F.3d 1157 (10th Cir. 2012), where a state criminal defendant sued in federal court to compel the court clerk to docket an appeal in his criminal case. The clerk had already refused to docket the appeal before the federal lawsuit was filed. The lawsuit was dismissed based on Eleventh Amendment immunity because it sought an injunctive remedy for past action rather than prospective relief for an ongoing violation of federal rights:

> Although Mr. Buchheit's complaint states that he is seeking prospective injunctive relief, he wants an order allowing him to proceed IFP and docket his appeal in state court. R. 12. Because he is merely seeking to address alleged past harms rather than prevent prospective violations of federal law, we can only reasonably categorize such relief as retrospective. As such, it does not fall into the Ex Parte Young exception to state sovereign immunity, and we must affirm the dismissal of his complaint.  (*See* 705 F.3d at 1159)

In this case, plaintiffs similarly seek an order compelling the performance of an official act by state court clerks to remedy the past event of their refusal to issue marriage licenses, and seek no relief that can be obtained by action of these defendants affecting the future legal status of a marriage between persons of the same sex under Kansas law.

The district court decision that was affirmed in ***Bucheit v. Green*** offered a more detailed explanation for why injunctive relief could not be granted, as a matter of law:

> To the extent this court can construe plaintiff's petition as one for mandamus, it also fails. A federal district's mandamus authority extends only to federal officials. *See* 28 U.S.C. § 1361 ("The district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."); *see also Amisub (PSL), Inc. v. State of Colo. Dep't of Social Servs.*, 879 F.2d 789, 790 (10th Cir.1989) ("No relief against state officials or state agencies is afforded by § 1361."); *Sockey v. Gray*, 159 F. App'x 821, 822 (10th Cir. 2005) (holding federal courts are without jurisdiction to grant a writ of mandamus against state and local officials).

*     *     *

Even if the Eleventh Amendment did not prevent the court from exercising subject matter jurisdiction, the plain language of § 1983 bars plaintiff's claim against this quasi-judicial defendant.[5]

> [5] **42 U.S.C. § 1983 (providing that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.");** see Willner v. Frey, 421 F.Supp.2d 913, 926 (E.D.Va.2006) (holding **clerk of court may derivatively claim the benefit of absolute judicial immunity in declaratory judgment action where acting within official capacity**); see also Faurot v. Barton, No. 1:06–cv–01005–AWI–SMS, 2007 WL 3125078, at E.D.Cal. Oct. 24, 2007) (holding **court clerks and executive officer retained quasi-judicial immunity from a suit for damages for rejecting the plaintiff's petition**). (*See Buchheit v. Green,* No. 12-4038-CM-KGS, 2012 WL 1673917, **4-5 (D. Kan. May 14, 2012); (emphasis supplied).

A similar conclusion was reached in ***Knox v. Bland***, 632 F.3d 1290, 1292 (10ᵗʰ Cir. 2011):

> But even if Mr. Knox's federal-court claims can survive, at least in part, *Rooker–Feldman*, he is not entitled to relief. To the extent that he is seeking relief in the nature of mandamus, ordering Defendants to take action in their capacities as state judges, "[w]e have no authority to issue such a writ to direct state courts or their judicial officers in the performance of their duties." *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n. 5 (10th Cir.1986) (internal quotation marks omitted); *see Olson v. Hart*, 965 F.2d 940, 942 (10th Cir.1992) ("Federal courts have no authority to issue a writ of mandamus to a state judge.").

> Likewise, **he cannot obtain injunctive relief against Defendants**. Although we have previously said that a plaintiff may obtain an injunction against a state judge under 42 U.S.C. § 1983, *see Harris v. Champion*, 51 F.3d 901, 905 (10th Cir.1995); *Olson*, 965 F.2d at 943, those statements were abrogated by **the Federal Courts Improvement Act of 1996, which provides that "injunctive relief [against a judicial officer] shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable**," 42 U.S.C. § 1983. (Emphasis supplied)

*See also,* ***Landrith v. Gariglietti***, 505 Fed. Appx. 701, 702-703, 2012 WL 6062668 (10ᵗʰ Cir. 2012):

> Federal courts are not authorized to grant injunctive relief against judicial officers taking actions in their judicial capacity, absent limited circumstances not present here. 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in

such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). Yet there is no question that Mr. Landrith is seeking to sue judicial officers for actions taken in their judicial capacity. See Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir.2002) (judges and **court clerks are judicial officers**). **Neither under the long-entrenched, if judge made, "domestic relations exception" are federal courts entitled to issue "divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).** Nor are attempts to "disguise the true nature of" a domestic relations action in order to secure a federal forum sufficient to preclude application of this rule. McLaughlin v. Cotner, 193 F.3d 410, 413 (6th Cir.1999). Given all this, we have no question the district court correctly dismissed Mr. Landrith's case under § 1915(e)(2). (emphasis supplied).

The domestic relations exception to federal jurisdiction is relevant to the authority of the federal courts to address state definitions of marriage, according to *United States v. Windsor*, __U.S.__, 133 S. Ct. 2675, 2691, 186 L. Ed. 2d 808 (2013) and *Sosna v. Iowa*, 419 U.S. 393, 404, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975).

Lack of Article III standing to sue these defendants for the relief requested will also prevent plaintiffs from prevailing on the merits by depriving the Court of subject matter jurisdiction. Since the injunction sought against these defendants will not achieve the relief desired by these plaintiffs, injunctive relief is inappropriate even if Eleventh Amendment immunity did not apply. The propriety of nonrecognition lawsuits naming court clerks and executive branch officials as defendants was addressed in the case of *Bishop v. Oklahoma*, 333 Fed. Appx. 361, 2009 WL 1566802 (10th Cir. 2009), *opinion after remand Bishop v. Smith*, 760 F.3d 1070 (2014). The conclusion in those successive opinions was first that a state's executive officers cannot be sued to enforce marital rights that are administered by the judiciary, and second that even a judicial officer (court clerk) cannot be sued to compel recognition of marriages that the named individual has no authority to recognize or reject. The lack of standing was fatal not just to injunctive relief, but also to the claims for declaratory relief against the clerk. *See* 760 F.3d at 1091, n.13.

13

A similar lack of standing was fatal to a lawsuit against the clerk who would issue a marriage license to an applicant seeking to challenge Utah's prohibition of polygamous marriages in the case of *Bronson v. Swensen*, 500 F.3d 1099 (10th Cir. 2007). The adverse consequence that the plaintiffs in *Bronson* sought to avoid would not be inflicted by the clerk, but by other government officials, and so a lawsuit brought against the clerk would have been ineffective. Similarly here the asserted adverse consequences that would harm these plaintiffs would be imposed by other state officials who would refuse to give effect to any marriage entered into between couples of the same sex, whether the defendant clerks issued marriage licenses or not.

The relief ultimately granted in *Bishop* was a judgment against the State of Oklahoma, not a judgment against any of the individual state officials who were originally named as defendants. At the very least the *Bishop* case would require substitution here of one or more different defendants who are able to provide the desired legal recognition of otherwise void marriages before any effective form of relief could be granted by this Court.

## 2. THE COURT SHOULD ABSTAIN FROM GRANTING THE REQUESTED RELIEF.

The Court has requested that the parties address the potential for abstention under either the *Pullman* doctrine or *Younger* abstention. Defendant Moser does not assert that relief should be denied under either of these abstention doctrines *at this time*. Abstention doctrines will become pertinent under these rationales only if future action by the Kansas Supreme Court makes them relevant.

*Pullman* abstention is appropriate when: "(1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim;

14

and (3) an incorrect decision of state law . . . would hinder important state law policies." *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992); *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1118-19 (10th Cir. 2008).

      The mandamus action pending in the Kansas Supreme Court may render it unnecessary for this Court to reach a decision on the constitutional questions posed, depending on the ultimate scope of the issues decided. Whether the decision in the mandamus action will hinge upon an interpretation of state law or instead will depend upon federal law is uncertain. Because the Kansas Supreme Court has ordered briefing on both state law and federal law issues it could base its decision on either. *Pullman* abstention is discretionary.

      Three factors govern whether abstention is required under so-called *Younger* abstention. The conditions that must be present to trigger this form of abstention are:

      (1) there is an ongoing state criminal, civil, or administrative proceeding,

      (2) the state court provides an adequate forum to hear the claims raised in the federal complaint,

      (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*See Seneca–Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir.1989); *Chapman v. Oklahoma*, 472 F.3d 747, 749 (2006). "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003).

15

It is questionable whether the mandamus proceeding could provide these plaintiffs with an adequate forum unless it produces a decision that grants them a right to appeal the denial of their license applications. That appeal would undoubtedly provide them an adequate forum, in the event it becomes available. Chief Judge Moriarty has now filed an answer in the mandamus proceeding. His answer contends that he had jurisdiction over a case or controversy that allowed him to decide whether Kansas laws are constitutionally valid, solely by reason of the pendency of applications for same-sex marriages. If the Kansas Supreme Court decides that judicial decisions responding to marriage license applications are orders entered in a civil proceeding, then any such applicant denied a license would have a statutory right of appeal. If an appeal is available, these four plaintiffs will still be able to pursue a direct appeal from the decisions that denied their requests for marriage licenses.

It is not known at this time how soon the Kansas Supreme Court will decide the mandamus case, though it is clear that no ruling will issue before November 6, 2014, when oral arguments will occur. If a right of appeal is recognized and plaintiffs fail to pursue that right, they risk failure on the merits based on principles of *res judicata*.

## 3. THE STANDARDS FOR GRANTING EITHER A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION CANNOT BE MET.

Under the traditional four-prong test for a preliminary injunction, the party moving for an injunction must show: (1) a likelihood of success on the merits; (2) a likely threat of irreparable harm to the movant; (3) the harm alleged by the movant outweighs any harm to the non-moving party; and (4) an injunction is in the public interest. *See Winter v. NRDC*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). Three types of preliminary injunctions are specifically disfavored: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary

16

injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. For these categories of disfavored preliminary injunctions, "the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction." *See Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012).

These standards cannot be met in the present case. There is no likelihood of success on the merits. Eleventh Amendment immunity and lack of Article III standing threaten to terminate the lawsuit altogether, and the plain language of 42 U.S.C. § 1983 bars preliminary injunctive relief. Without a right to prevail on the merits, injunctive relief is not available. *See Planned Parenthood of Kansas and Mid-Missouri v. Moser*, 747 F.3d 814 (10th Cir. 2014).

This Court is not compelled to apply the conclusions reached in the Tenth Circuit cases relied upon by plaintiffs in preference to the conclusions reached in the case of *In re Estate of Gardiner*, 273 Kan. 191, 42 P.3d 120, *cert. denied sub nom Gardiner v. Gardiner*, 537 U.S.825, 123 S.Ct. 113, 154 L.Ed.2d 36 (2002). Rather, this Court is obligated to give full faith and credit to the *Gardiner* decision by reason of 28 U.S.C.A. §1738 unless and until the United States Supreme Court issues a decision reversing it either expressly or impliedly. No decision of the Tenth Circuit Court of Appeals has achieved that reversal. The Kansas Supreme Court is constitutionally obligated to follow precedents of the United States Supreme Court, but not decisions of a federal circuit court of appeals particularly when, as here, there is contrary binding precedent on point:

> [T]he views of the federal courts of appeals do not bind the California Supreme Court when it decides a federal constitutional question, and disagreeing with the lower federal courts is not the same as ignoring federal law. (see *Johnson v. Williams*, __U.S.__, 133 S.Ct. 1088, 1098, 185 L.Ed.2d 105 (2013)

17

The United States Supreme Court has not abandoned principles of federalism, and has instead strengthened its support for state-by-state experimentation in addressing difficult social questions:

> Were the Court to rule that the question addressed by Michigan voters is too sensitive or complex to be within the grasp of the electorate; or that the policies at issue remain too delicate to be resolved save by university officials or faculties, acting at some remove from immediate public scrutiny and control; or that these matters are so arcane that the electorate's power must be limited because the people cannot prudently exercise that power even after a full debate, that holding would be an unprecedented restriction on the exercise of a fundamental right held not just by one person but by all in common. It is the right to speak and debate and learn and then, as a matter of political will, to act through a lawful electoral process. (*See Schuette v. Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN)*, __U.S.__,  134 S.Ct. 1623, 1636, 188 L.Ed.2d 613 (2014))

Every state and federal judge takes an oath to uphold the Constitution of the United States. When a circuit court decision is inconsistent with Supreme Court precedent and the Constitution, there is no obligation to disregard the Constitution and instead follow the erroneous circuit court decision. The dissenting opinions of Judge Kelly in *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) and *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014) clearly demonstrate the errors underlying the conclusion that Supreme Court decisions that expressly reserve to the states the power to decide delicate political questions really mean the opposite of what they say, and why the binding precedent in *Gardiner* remains the controlling law in Kansas.

No case has allowed the sort of claim that plaintiffs have presented against Secretary Moser, which is essentially an asserted constitutional right to a marriage process uniquely tailored to individual personal preferences. *See Rappaport v. Katz*, 380 F. Supp. 808 (S.D.N.Y 1974). Plaintiffs have waited five years or more to attempt a formal marriage, and apparently have voluntarily eschewed entering into common law marriages. Neither the Complaint nor the motion alleges any exigency or risk of imminent adverse legal consequences to plaintiffs if they await a

final judgment on the merits. The public interest definitely favors having one rule for all Kansans, rather than different rules in two of 105 Kansas counties.

## CONCLUSION

For all of the above stated reasons the motion for a temporary restraining order or preliminary injunction should be denied.

Respectfully Submitted,

OFFICE OF THE ATTORNEY GENERAL
DEREK SCHMIDT

_____

Steve R. Fabert, #10355
Assistant Attorney General
Office of the Attorney General
120 S.W. 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 368-8420
Fax: (785) 296-6296
Email:   steve.fabert@ag.ks.gov
*Attorney for Defendant Moser*

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of October, 2014, a true and correct copy of the above and foregoing was filed by electronic means via the Court's electronic filing system which serves a copy upon Plaintiff's counsel of record, Stephen Douglas Bonney, ACLU Foundation of Kansas, 3601 Main Street, Kansas City, MO 64111 and Mark P. Johnson, Dentons US, LLP, 4520 Main Street, Suite 1100, Kansas City, MO 64111, dbonney@aclukansas.org and Mark.johnson@dentons. com with a courtesy copy served by email upon Joshua A. Block, American Civil Liberties Foundation, 125 Broad Street, 18th   Floor, New York, NY 100004, jblock@aclu.org.

_____

Steve R. Fabert
*Attorney for Defendant Moser*