## IN THE UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KAIL MARIE and MICHELLE L. BROWN, )
and KERRY WILKS, Ph.D., and DONNA )
DITRANI, )
                  Plaintiffs, )  Case No. 14-CV-2518-DDC-TJJ
v. )
 )
ROBERT MOSER, M.D., in his official capacity )
as Secretary of the Kansas Department of )
Health and Environment and )
DOUGLAS A. HAMILTON, in his official )
Capacity as Clerk of the District Court for the 7th )
Judicial District (Douglas county), and )
BERNIE LUMBRERAS, in her official capacity )
as Clerk of the District Court for the 18th )
Judicial District (Sedgwick County), )
                 Defendants. )
_____)

### DEFENDANT CLERKS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR  TEMPORARY RESTRAINING ORDER

Douglas A. Hamilton, Clerk of the District Court of Douglas County Kansas, and Bernie Lumbreras, Clerk of the District Court for Sedgwick County, Kansas, concur in the Response filed by KDHE Secretary Dr. Moser in opposition to Plaintiffs' request for temporary restraining order or preliminary injunction (Doc. 14).  Mr. Hamilton and Ms. Lumbreras submit this response to emphasize certain points specific to their position as District Court Clerks in Kansas. For the reasons stated by Dr. Moser and as elaborated upon briefly herein, Plaintiffs' request must be denied.

First, Plaintiffs' request for a temporary restraining order or preliminary injunction against two court clerks, judicial officers, is prohibited by federal law.  Second, the Tenth Circuit has already recognized that court clerks are not the proper defendants in an action such as this seeking recognition of same-sex marriage as this is not the clerks' role.  Third, the Kansas

1

Supreme Court has already assumed jurisdiction over this matter in a case filed prior to this one, *State ex rel. Schmidt v. Moriarty* and in that action, on October 10, 2014 ordered a stay on issuing marriage licenses to same-sex couples in Johnson County, Kansas pending further order of the Court, citing "the interest of establishing statewide consistency." Granting Plaintiffs' requested relief, assuming that were authorized by law, would conflict with the Kansas Supreme Court's Order, but also its supervisory authority over all of the clerks in Kansas. It would also lead to a confusing and non-uniform situation in which clerks in two counties are doing one thing and the other 103 are doing something else, implicating important federalist concerns by disruption of a state court judicial system, concerns embodied in federal statute as well as abstention doctrines.

## STATEMENT OF FACTS

1. Douglas Hamilton and Bernie Lumbreras are Clerks of the District Court in Douglas and Sedgwick Counties respectively. Complt. (Doc. 1), at ¶¶ 9-10.

2. In Kansas, both clerks of the district court and judges have a statutorily prescribed role in issuing marriage applications and licenses as stated in K.S.A. 2014 Supp. 23-2505.

3. The Complaint, filed on October 10, 2014, alleges that on October 7, 2014, Plaintiff Wilks, who resides in Sedgwick County, sought a marriage license for the purpose of marrying another woman and was told by Chief Judge Fleetwood of the 18th Judicial District that she could not obtain a marriage license in Kansas to marry another woman. Complt. (Doc. 1), at ¶ 19.

4. The Complaint alleges that Plaintiff Marie, who resides in Douglas County, applied for a marriage license at the Douglas County Clerk's Office on October 8, 2014 and

was told to return on October 14, 2014.  Complt. (Doc. 1), at ¶ 16.

5.  According to the Complaint, on October 9, 2014, the Chief Judge of the Seventh Judicial District, Robert Fairchild, issued Administrative Order 14-13 which states that the court "is bound to apply and follow existing Kansas laws."  Complt. (Doc. 1), at ¶ 17.  The Order concludes:  "The Clerk of the District Court shall not issue a marriage license to these applicants or to any other applicants of the same sex." *Id.*

6.  In Kansas, district courts exist in all Kansas counties. K.S.A. 20-301. A clerk of the district court is appointed in each county.  K.S.A. 2014 Supp. 20-343.[1]

7.  Appointed clerks, their deputies and assistants "have such powers, duties and functions as are prescribed by law, prescribed by rules of the supreme court or assigned by the chief judge."  K.S.A. 20-343.  The clerks of the district court "shall do and perform all duties that  may be required of them by law or the rules and practice of the courts...."  K.S.A. 20-3102.  Clerks are expressly prohibited from giving legal advice.  K.S.A. 20-3133.

8.  As per K.S.A. 54-106, "[a]ll officers elected or appointed under any law of the state of Kansas shall, before entering upon the duties of their respective offices, take and subscribe an oath or affirmation, as follows: 'I do solemnly swear [or affirm, as the case may be] that I will support the constitution of the United States and the constitution of the state of Kansas, and faithfully discharge the duties of [my office]. So help me God.'"

9.  Kansas is a unified court system.  K.S.A. 20-101, Kan. Const. Art. 3, § 1 ("[t]he supreme court shall have general administrative authority over all courts in this state");

---

[1] K.S.A. 20-343, along with other statutes concerning the Judicial Branch, was amended in 2014.  2014 Sess. Laws Ch. 82.  The current version appears at http://ksrevisor.org/statutes.

K.S.A. 2014 Supp. 20-318, K.S.A. 2014 Supp. 20-319.  In Kansas, the district courts are organized into thirty-one (31) judicial districts.  Kan. Const., Art. 3, § 6; K.S.A. 4-202, *et seq.*  Chief Judges, including Judge Fairchild and Judge Fleetwood, are subject to appointment by and supervision of the Kansas Supreme Court. *See, e.g.,* K.S.A. 2014 Supp. 20-329.  Clerks of the District Court Hamilton and Lumbreras, are Kansas Judicial Branch officers, appointed by their respective Chief Judges and are Judicial Branch employees.  K.S.A. 2014 Supp. 20-343, K.S.A. 2014 Supp. 20-345.  As of June 30, 2013, there were 246 district judges in Kansas. Annual Report of the Courts of Kansas, FY 2013, available at http://intranet.kscourts.org:7780/stats.[2]

10.  Citing the Attorney General's reference to an "inconsistent practice among the state's 31 judicial districts," and "in the interest of establishing statewide consistency," on Friday, October 10, 2014, the Kansas Supreme Court issued an Order in *State ex rel. Schmidt v. Moriarty,* 112590, granting the Attorney General's request for a temporary stay of Chief Judge Kevin Moriarty's Administrative Order allowing the issuance of same-sex marriage licenses in Johnson County, Kansas. A certified copy of the Supreme Court's Order is attached as Exhibit A hereto.  The Court also set an expedited briefing schedule and set a hearing for November 6, 2014 at 10 a.m. to determine the issues raised by Judge Moriarty's Order.  *Id.*

## ARGUMENT AND AUTHORITIES

Plaintiffs request a temporary restraining order or a preliminary injunction against Ms. Lumbreras and Mr. Hamilton, two of the 105 district court clerks, enjoining them from following existing state law as well as the express direction of their respective Chief Judges and by

---

[2] A court may take judicial notice under Fed. R. Evid. 201 of information on the Internet.  *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).

implication, the October 10, 2014 Order of the Kansas Supreme Court.  Plaintiffs' request for immediate injunctive relief against the Clerks must be denied for several reasons.

### *Federal Law Prohibits the Requested Injunction Against Judicial Officers*

Plaintiffs premise their request for injunctive relief on 42 U.S.C. § 1983.  However, since the 1996 Amendment, Federal Courts Improvement Act of 1996, Pub. L. 104-317, 110 Stat. 3847 (Oct. 19, 1996), 42 U.S.C. § 1983 expressly prohibits injunctive relief against judicial officers, including the proviso:  "except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, **injunctive relief shall not be granted** unless a declaratory decree was violated or declaratory relief was unavailable."  (Emphasis added).

Mr. Hamilton and Ms. Lumbreras are judicial officers, appointed by their respective Chief Judges.  K.S.A. 2014 Supp. 20-343.  The Complaint alleges that they were acting in their respective official capacities as clerks in this matter.  *See* Complt. (Doc. 1), at ¶¶ 9-10. The Complaint also alleges that Clerks Hamilton and Lumbreras were acting on orders of their respective Chief Judges, Fairchild and Fleetwood.  *Id.*, at ¶¶ 17, 19.  In Kansas, the issuance of marriage licenses is a responsibility of clerks and judges, K.S.A. 2014 Supp. 23-2505, both of which are judicial officers. *See, e.g., Lundahl v. Zimmer,* 296 F.3d 936, 939 (10th Cir. 2002). Injunctive relief is expressly proscribed by 42 U.S.C. § 1983.  The Tenth Circuit has so held. *See, e.g, Landrith v. Gariglietti,* 505 Fed. Appx. 701, 702-03, 2012 WL 6062668 (10th Cir. 2012); *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011).

To the extent that Plaintiffs complain of the Clerks' respective actions in allegedly failing to issue marriage licenses on the orders of their respective Chief Judges upon request on October 7-8, 2014, retrospective relief, this relief is also barred by Eleventh Amendment immunity as stated in *Buchheit v. Green,* 705 F.3d 1157, 1159 (10th Cir. 2012), a case on point.

Similarly, under the somewhat unique circumstances presented by this case given the action and October 10, 2014, Order of the Kansas Supreme Court, the Anti-Injunction Act prohibits this court from granting injunctive relief against the Clerks.  The statute, 28 U.S.C. § 2283, provides:  "[a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  As explained by the U.S. Supreme Court:

> [t]he Act, which has existed in some form since 1793, see Act of Mar. 2, 1793, ch.22, § 5, 1 Stat. 335, is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts.  It represents Congress' considered judgment as to how to balance the tensions inherent in such a system. Prevention of frequent federal court intervention is important to make the dual system work effectively.   By generally barring such intervention, the Act forestalls 'the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court.' Due in no small part to the fundamental constitutional independence of the States, Congress adopted a general policy under which state proceedings 'should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.'

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (citations omitted).

An injunction ordering the Clerks to do as Plaintiffs suggest implicates the policies and interests behind the Anti-Injunction Act.  What Plaintiffs seek from this Court is an Order enjoining the Orders of Chief Judges Fairchild and Fleetwood and, by implication, the Kansas Supreme Court's proceeding  in *State ex. rel. Schmidt v. Moriarty*.  In its October 10, 2014, Order, the Supreme Court stated that it was assuming jurisdiction over the marriage license question "in the interest of establishing statewide consistency" and establishing a briefing schedule and hearing date to determine one or more issues set for briefing in the Order.  The requested temporary restraining order in this case interferes with the stay order and the pending proceeding

in *State ex rel. Schmidt v. Moriarty.*[3]

### Clerks Are Not Necessary or Proper Defendants in "Non-Recognition" Cases

Plaintiffs don't just seek a marriage license; they seek recognition of their marriage for all purposes. *See* Complt. (Doc. 1), ¶ 2 (implying that Plaintiffs seek "the legal sanction, respect, protections, and support that heterosexuals and their families are able to enjoy through marriage."); ¶ 5 (referring to the need to eliminate "the myriad serious harms inflicted on them by the marriage ban and Defendants' enforcement of it"); ¶ 14 (stating that plaintiffs are without "the same legal shelter, dignity, and respect afforded by the State of Kansas to other families through access to the universally celebrated status of marriage. . . [plaintiffs are deprived of] equal dignity, security, and legal protections afforded to other Kansas families."); ¶ 28 (referring to the right to inherit property and to file joint state tax returns); ¶ 29 (referring to "unique social recognition" from marriage); ¶ 47 (referring to an interest in "obtaining full liberty, dignity, and security for themselves, their family, and their parent-child bonds"); ¶ 60- ¶ 77 (alleging other interests).   Contrary to Plaintiffs' assertion, a favorable decision against two court clerks in two of 105 Kansas counties will not "avoid the injuries described above," or "prevent …irreparable injuries." *Id.,* at ¶ 80.

---

[3] Although out of candor counsel acknowledges some contrary indication in the Supreme Court's decision in *Mitchum v. Foster,* 407 U.S. 225 (1972) (holding that the availability of an equitable remedy in § 1983 and the facts of that case in which the state court proceeding was alleged to be unconstitutional allowed for an exception to the Anti-Injunction Act), that 1972 decision obviously preceded the 1996 Amendment proscribing preliminary injunctive relief against judicial officers (and hence, removing the underpinning for the holding as to state court judicial officers).  Further, *Mitchum* did not deal with the situation alleged here where the state court proceeding is not itself alleged to be unconstitutional as stated in *Hickey v. Duffy,* 827 F.2d 234, 238 (7th Cir. 1987).

Accordingly, as the Tenth Circuit held in the *Bishop* case, the district court clerks are not proper defendants as they don't "recognize" marriages. *Bishop v. Oklahoma*, 333 Fed. Appx. 361, 2009 WL 1566802 (10th Cir. 2009), *opinion after remand Bishop v. Smith*, 760 F.3d 1070, 1091, n.13 (2014). This also goes to the related question of standing and appropriate relief, as while even if this Court were to grant Plaintiffs' requests, this would only result in paperwork which would require still further action by one or more courts of competent jurisdiction to determine if it had any validity or legal effect. *See, e.g., In re Estate of Gardiner*, 273 Kan. 191, 42 P.3d 120, *cert. denied sub nom Gardiner v. Gardiner*, 537 U.S.825 (2002). It will not eliminate Plaintiffs' alleged harms, nor will it achieve what Plaintiffs seek.

Otherwise put and as raised by this Court's request for information on standing, "a plaintiff must show: (1) that [she] has suffered a concrete and particular injury in fact that is either actual or imminent; (2) the injury is **fairly traceable to the alleged actions of the defendant**; and (3) **the injury will likely be redressed by a favorable decision**." The issue at hand turns on the third requirement – that of redressability – which is 'not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute.'" *Bishop v. Smith,* 760 F.3d 1070, 1088 (10th Cir. 2014) (emphasis added; citations omitted). While the Clerks have no evidentiary burden at this juncture, the Complaint clearly alleges that the Clerks are following Kansas law as it exists today and that they have no legal authority to do otherwise. *See, e.g.,* Complt. (Doc. 1), at ¶¶ 9-10 (alleging that the clerks "must ensure compliance . . . with relevant Kansas laws, including those that exclude same-sex couples from marriage"); ¶¶ 22-27 (pointing out that Kansas law as adopted by the Legislature as well as the constitutional amendment prohibit same-sex marriage).

According to the Complaint, Clerks Hamilton and Lumbreras and their respective deputies are complying with their oaths of office and the Orders of their respective Chief Judges. Hamilton and Lumbreras have no power to remedy the other alleged harms set forth in the Complaint such as the right to file joint tax returns or inherit property.  Complt. (Doc. 1), at ¶ 28. An injunction against the Clerks, even if that were legally possible and factually supported, would not redress the Plaintiffs' alleged injuries or harms; Plaintiffs have failed to posture their suit correctly for standing purposes to obtain the recognition and relief they seek.  *See also, Bronson v. Swensen*, 500 F.3d 1099 (10th Cir. 2007) (questioning standing in a lawsuit challenging a clerk's refusal to issue a marriage license).

### The Requested Injunction is Barred by Abstention

Although these issues may be extensively briefed at the appropriate time, the Court indicated it was interested in the parties' views on standing and abstention.  Two abstention doctrines mentioned by the Court stemmed from *Younger v. Harris,* 401 U.S. 37 (1971), and *Railroad Commission v. Pullman Co.,* 312 U.S. 496 (1941), respectively.  Those two doctrines are addressed in Defendant Moser's Response (Doc. 14, at 14-16), in which the Clerks concur.

Plaintiffs' filing on this issue (Doc. 7) acknowledges that *Younger* bars federal injunctive relief in "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  (Doc. 7, at 4, citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).  Plaintiffs' cursory analysis ignores the general rule to impliedly suggest that only the two specific examples involved in the two cases cited by the *NOPSI* Court (civil contempt order and requirement for the posting of bond pending appeal), are within *Younger.  NOPSI* and *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), cited by Plaintiffs, involved underlying administrative actions and are not

factually analogous here.  However, the rule stated in *NOPSI*, which was reiterated in *Sprint*, at 591, without much discussion, is not by its terms limited to civil contempt orders and orders involving posting of bonds pending appeals.  *See Sprint,* 134 S. Ct. at 588 (recognizing that the Court has applied *Younger* to state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts.").  In *State ex rel. Schmidt v. Moriarty,* the Court issued a stay order on issuance of same-sex marriage licenses as part and parcel to its assuming jurisdiction in that case, preserving the status quo pending its opportunity to rule on the questions presented; that in and of itself is most assuredly a judicial function, as well as assuring uniformity by clerks (as well as the 246 Kansas Judges charged by statute with performing this function), in their performance of this function in the State of Kansas, the type of order "uniquely in furtherance of the state courts' ability to perform their judicial functions."

Although this issue can be briefed extensively at the appropriate time, it bears noting that the requested injunction against two of 105 clerks operating under the supervision of the Kansas Supreme Court and its judicial system implicates the rationale and policies underlying the abstention doctrine first announced by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  In that case, a federal court proceeding was brought by Sun Oil Company to attack the validity of an order of the Texas Railroad Commission granting Burford a permit to drill four wells in a Texas oil field. The Court observed that even when a federal court may have jurisdiction, it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Id.*, at 316-18.  In that case, the Court observed that the issue involved a Texas regulatory system, hundreds of operators, and important state interests being overseen by the Texas Railroad Commission in a unified system. *See id.*, at 318-30.

As later elaborated upon by the Supreme Court, this doctrine has been applied "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or (1) where the 'exercise of federal review of the question in a case and in similar cases **would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern**.'" *NOPSI,* 491 U.S. at 361 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1986)) (emphasis added).

As a matter of state law as set forth above, Kansas court clerks operate as part of a unified Kansas judicial system, operating under the control and supervision of the Kansas Supreme Court.  In issuing its October 10, 2014, Order in *State ex rel. Schmidt v. Moriarty,* the Court was not only acting as a Court but also as an entity with administrative and supervisory authority over Chief Judge Moriarty, Sandra McCurdy, Clerk of the Court of Johnson County, and all of the other Clerks in the State of Kansas.  The Court's October 10, 2014, Order indicated it was granting the stay on issuance of same-sex marriage licenses in Johnson County "in the interest of establishing statewide consistency."  Obviously, an Order from this Court requiring issuance of marriage licenses from two of 105 district court clerks in two of 105 counties is contrary to the "interest of establishing statewide consistency" cited by the State Supreme Court.  It also creates a confusing, disruptive and non-uniform situation in this important area of substantial public concern and state policy interests, implicating the policies behind the *Burford* abstention doctrine.

## CONCLUSION

Defendants have no burden at this point, as their responsive pleadings are not yet even due.  As pointed out in Dr. Moser's Response (Doc. 14, at 16-19), Plaintiffs bear the heavy burden of showing that they are entitled to the extraordinary relief requested in this case. Plaintiffs' Complaint and request for immediate temporary restraining order and preliminary injunction (Docs. 1, 3-4), fail to meet that burden. The request for temporary restraining order and/or preliminary injunction against Clerks Douglas Hamilton and Bernie Lumbreras must be denied by this Court.

Respectfully Submitted,

OFFICE OF THE ATTORNEY GENERAL
DEREK SCHMIDT

s/M.J. Willoughby
M.J. Willoughby KS 14059
Assistant Attorney General
Office of the Attorney General
120 S.W. 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 296-2215; Fax: (785) 296-6296
Email:  MJ.Willoughby@ag.ks.gov
*Attorney for Defendants Hamilton and Lumbreras*

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of October, 2014, a true and correct copy of the above and foregoing was filed by electronic means via the Court's electronic filing system which serves a copy upon Plaintiff's counsel of record, Stephen Douglas Bonney, ACLU Foundation of Kansas, 3601 Main Street, Kansas City, MO 64111 and Mark P. Johnson, Dentons US, LLP, 4520 Main Street, Suite 1100, Kansas City, MO 64111, dbonney@aclukansas.org and Mark.johnson@dentons. com with a courtesy copy served by email upon Joshua A. Block, American Civil Liberties Foundation, 125 Broad Street, 18th Floor, New York, NY 100004, jblock@aclu.org, and upon Steve Fabert, Assistant Attorney General, 120 S.W. 10th, Topeka, KS 66612-1507, steve.fabert@ag.ks.gov, Counsel for Defendant Moser.

s/M.J. Willoughby
M.J. Willoughby