IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KAIL MARIE, *et al.*,

        Plaintiffs,

v.

ROBERT MOSER, M.D., *et al.*,

        Defendants.

Case No. 14-cv-2518-DDC-TJJ

---

Brief of *Amici Curiae* Phillip W. Unruh and Sandra L. Unruh.

IN OPPOSITION TO PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION

---

Phillip W. Unruh
1216 Cental
Harper, Kansas, 67058
Attorney for *Amici Curiae*
Phillip W. Unruh and Sandra L. Unruh
(620) 896-7301

## STATEMENT OF MATTER BEFORE THE COURT

Plaintiffs seek preliminary injunction (1) preventing Defendants from enforcing article 15, section 16 of the Kansas Constitution and Kansas Statutes Annotated §§ 23-2501 and 23-2508 that would result in the exclusion of same-sex couples from marriage or recognition of marriage and (2) requiring Defendants to issue and recognize marriage licenses to same-sex couples who would otherwise qualify.  Doc. 3, page 1, Plaintiffs' Motion.

## STATEMENT OF FACTS

The facts are as alleged in Doc.15, ps. 2-4, Defendant Moser's response in opposition to Plaintiffs' Motion.  As marriage, as defined in Kansas, is the law, marriage as hereafter used will only have that meaning.

## ADOPTION BY REFERENCE (Fed. R. Civ. P. 10)

*Amici* adopt by reference the conclusions, arguments and authorities of:

1. Defendant Moser's response in opposition to Plaintiffs' Motion. Doc. 14. (Moser response)

2. Defendants Hamilton and Lumbreras' response in opposition to Plaintiffs' Motion. Doc. 15.

3. Motion to intervene of Phillip W. Unruh and Sandra L. Unruh,  Doc. 13.

4. Judge Kelly dissent in *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir.) Doc. 31-1.

## ADDITIONAL ARGUMENTS AND AUTHORITIES

PLAINTIFFS DO NOT MEET THE STANDARDS FOR A PRELIMINARY INJUNCTION. See *Winter v. NRDC*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

A. Likelihood of success on the merits:

1. As stated in the Moser response at, Doc. 14 p. 6, " based on the issues to be briefed in the mandamus proceeding, it appears that *the Kansas Supreme Court*

may decide what effect recent Tenth Circuit Court of Appeals precedents should have on Kansas marriage laws." See *State of Kansas ex rel. Schmidt v. Moriarty*, No. 112,590, Doc. 14-1 *Moriarty* order, in particular p. 3 (2) (b) and (c). As Plaintiffs' case for likelihood of success on the merits depend, for the most part, on the Tenth Circuit Court of Appeals precedents and the decision of the Kansas Supreme Court is yet to be determined, the outcome of Plaintiffs' case is uncertain at best.

2. Irregardless of the impact of the *Moriarty* case, the **legality of and jurisdiction for the decision of the court in *Kitchen v. Herbert*,** 755 F. 3d 1193, 1199 (10th Cir.) is more than in question. "The Constitution is silent on the regulation of marriage; accordingly, that power is reserved to the States, albeit consistent with federal constitution guarantees." See *Windsor*, 133 S. Ct. at 2691-92 and Judge Kelly Dissent in *Kitchen*, ps. 1 & 2, Doc. 13-1. "*Windsor* did not create a fundamental right to same-gender marriage, to the contrary, *Windsor* recognized the authority of the states to redefine marriage and stressed the need for popular consensus in making such change." *Id*, at 2692, *Judge Kelly* dissent, Doc. 13-1, p. 12. If the Kansas marriage amendment can be upheld it should. Having failed to adequately refute the arguments and authorities presented by Judge Kelly's *Kitchen* dissent and echoed by Defendants, Plaintiffs have fallen short of a strong showing of success on the merits.

B. There is no likely threat of irreparable harm to the Plaintiffs:

1. Plaintiffs argue that the State laws defining marriage is a marriage ban through which the State and Defendants send a *purposeful message* that they view lesbians, gay men, and their children as second-class citizens who are undeserving of the legal sanction, respect, protections, and support that heterosexuals and their families are able to enjoy through marriage. Plaintiffs complaint, Doc. 1, ps. 1-2. The issue of extending marriage to same-sex couples is a recent development. Long before it was an issue God said in the beginning that marriage is between a man and a woman. See *Bible*, Genesis 1:27, 2:24. And two thousand years ago Jesus

said marriage is between a man and a woman. See *Bible,* Matthew 19:4-5. The Kansas marriage amendment doesn't change the definition of marriage from what it ever has been. Neither do these recitations of marriage bare animosity toward anyone. Plaintiffs' allegations are insulting and contrived. This alleged harm being non existent needs no injunctive relief.

   2. Plaintiffs maintain that "the outcome of this case is a foregone conclusion," if that were the case there would be no need for the Court. Doc 4, p. 1, Plaintiffs' brief in support of injunctive relief. Plaintiffs argue that *deprivation of a constitutional right even for a minute* is irreparable harm, even though the Court has yet to determine what if any constitutional right has been violated.

   3. Plaintiffs complain of the harms to their dignity that result from being deprived of this most important relation should be considered irreparable. Doc. 4, p. 6, Plaintiffs' memorandum in support of injunctive relief. Plaintiffs fail to consider that marriage as it has been defined from the beginning **earned its dignity**. As compared to a same-sex relationships only the marriage relationship can produce children by intercourse with one another and only in the marriage relationship is a father and mother provided for the child. Everyone has a mother and father, we call this family. It has worked, very well (I may add), we are all a product of it. Who dares to cast asunder what God has joined together? Perhaps the lack of dignity is already earned by the sexual behavior in same-sex couples that defies nature. Injunctive relief is not appropriate to achieve the dignity same-sex couples imagine.

   4. Plaintiffs allege in paragraph 5 of their complaint, Doc. 1, that marriage is the only means Plaintiffs have to secure their rights to due process and equal protection of the law and to eliminate the myriad serious harms inflicted on them by Kansas marriage law and its enforcement. Plaintiffs are free to argue their case in Kansas to establish in law a unique name and associated rights for their relationship such as "Civil Union," which is legal in Colorado. Plaintiffs are free to recognize and bestow rights to their partners through wills, business power of attorney, health care power of attorney, deeds,

trusts, partnership contracts and many other ways.

    5. In fact Plaintiffs suffer **no violation of rights** under the United States Constitution.

    C. **The harm alleged by the Plaintiffs does not outweigh any harm to the Defendants.**

    1. A preliminary injunction would have the effect of **setting aside a law** 70% of the voters of Kansas cared enough to make a constitutional amendment. That would be a huge harm to the citizens of Kansas.

    2. If the court instituted the injunction in extending marriage to same-sex couples and then determined later not to extend marriage to same-sex couples the state's system of handling marriages would be in **disarray** and the validity of same-sex couples to whom marriage was extended would be in doubt.

    3. A preliminary injunction that extends marriage to same-sex couples would diminish the marriage status of married people in the State of Kansas. This would result in a *taking of their property right* in violation of the protections afforded by the Fifth and Fourteenth Amendments of the United States Constitution.

    4. A preliminary injunction would violate the *equal rights and due process protection clauses of the Fourteenth Amendment* to the United States Constitution with respect to married citizens of the State of Kansas as they would be singled out as a solution to the problems Plaintiffs complain result from their choice of a same-sex relationship.

    5. A preliminary injunction would defeat the *rationally related legitimate and compelling governmental purposes* the Kansas Constitutional amendment for marriage has including: responsible procreation, effective parenting, and the desire to proceed cautiously in this evolving area, that benefits every adult and child in Kansas.

    6. A preliminary injunction extending marriage to same-sex couples would violate the *right of married citizens in Kansas to equal protection* under the law by the Court's failure to protect marriage and support the right of Kansas citizens to codify its

implicit meaning.

7. A preliminary injunction would target marriage to solve the ills associated with Plaintiffs' choice of relationships based on the sex of married couples and thus **discriminate against married couples** based on sex.

### D. A preliminary injunction is not in the public interest.

1. For the reasons above stated.

## THE INTERESTS OF CHILDREN BORN AND TO BE BORN SHOULD BE FULLY EXAMINED IN A TRIAL OF THIS CASE ON THE MERITS.

### A. Procreation and Child rearing ideally occur within a stable marriage.

1. "[An] orderly society requires some mechanism for coping with the fact that sexual intercourse commonly results in pregnancy and childbirth." *Morrison v. Sadler*, 821 N.E. 2d 15, 25-26 (Ind. Ct. App. 2005). Marriage provides "the important legal and normative link between heterosexual intercourse and procreation on the one hand and family responsibilities on the other. The partners in a marriage are expected to engage in exclusive sexual relations, with children the probable result and paternity presumed." Id. at 26.

2. Husband and wife marriage "protects child well-being . . . by increasing the likelihood that the child's own mother and father will stay together in a harmonious household."[1]  "[C]hildren benefit from the presence of both a father and mother in the home." *Lofton v. Sec'y of Dep't of Children and Family Servs.*, 358 F.3d 804, 819 (11th Cir. 2004)

3. "[R]esearch clearly demonstrates that family structure matters for children, and the family structure that helps children the most is a family headed by two biological parents in a low-conflict marriage. Children in single-parent families, children born to

---

[1] Maggie Gallagher, (How) Will Gay Marriage Weaken Marriage As a Social Institution: A Reply to Andrew Koppelman, 2 U. ST. Thomas L.J. 33, 50-51 (2004).

unmarried mothers, and children in step families or cohabiting relationships face higher risks of poor outcomes than do children in intact families headed by two biological parents. There is thus value for children in promoting strong, stable marriages between biological parents."[2]

    4. Substantial research indicates fathers are as important as mothers to children's well being.[3]

    5. Because children and society needs fathers and mothers to raise children Kansas has the right to specially protect and support marriage.

    6. A change in definition of marriage suggested by Plaintiffs is self-serving to adults.

    7. Plaintiffs' claim that they are entitled to a speedy preliminary injunction, that approach does not serve the need to proceed cautiously.

## HOMOSEXUAL MALE COUPLES DO NOT HAVE STANDING IN THIS CASE OR IN THE ALTERNATIVE HOMOSEXUAL FEMALES DO NOT HAVE STANDING TO ADVANCE REMEDIES FOR ALLEGED CONSTITUTIONAL VIOLATIONS AGAINST HOMOSEXUAL MALES.

    1. Plaintiffs are female couples. Doc. 1 p. 3, complaint.

    2. Plaintiffs' complaint make numerous references of alleged civil rights violations of "gay men" (homosexual males) with reference to same-sex couples.

    3. Homosexual males are not parties in this matter.

    4. Homosexual female couples obviously differ in gender from male homosexual couples.

---

[2] Kristin Anderson Moore te al., Child Trends, Marriage From a Child's Perspective: How Does Family Structure Affect Children and What Can We Do about It? 6 (June 2002)

[3] See. e.g., W. Bradford Wilcox et al., Why Marriage Matters (2d ed. 2005); Cynthia C. Harper & Sara S. McLanahan, Father Absence and Youth Incarceration, 14 J. Res. On Adolescence 369, 385-86 (2004).

5. Homosexual male couples issues differ from that of homosexual female couples by virtue of their sexual behavior.

6. Since homosexual male couples have not become a party to this law suit, only the civil rights of same sex female couples should be considered.

## CONCLUSION

For all of the above stated reasons the motion for a preliminary injunction should be denied. *Amici Curiae*, Phillip W. Unruh and Sandra L. Unruh, wish to thank the court for its gracious invitation to file an amicus brief.

Respectfully submitted,

/s/ PhillipW. Unruh
Phillip W. Unruh, KS SC#09217
1216 Central
Harper, Kansas 67058
(620) 896-7301
(620) 896-7954
unruhlaw@att.net
Philip W. Unruh, *Amici Curiae*
Phillip W. Unruh and Sandra L. Unruh

## CERTIFICATE OF SERVICE

I certify that on, October 28, 2014, the foregoing document was served by e-mail on the following: Stephen Douglas Bonney, dbonney@aclukansas.org , Mark P. Johnson, Mark.johnson@dentons.com , Joshua A. Block, jblock@aclu.org ,attorneys for plaintiffs, Jeffrey A. Chanay, Chief Deputy Attorney General for the State of Kansas, Steve.Fabert@ag.ks.gov. attorney for Defendant Moser, and M.J. Willoughby, Asst. Attorney General, MJ.Willoughby@ag.ks.gov , attorney for defendants Hamilton and Lumbreras.

/s/ Phillip W. Unruh