**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION**

| | | |
|---|---|---|
| KAIL MARIE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 14-cv-2518 |
| ROBERT MOSER, M.D., in his official capaci- | ) | |
| ty as Secretary of the Kansas Department of | ) | |
| Health and Environment, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ON MARRIAGE RECOGNITION CLAIMS</u>

<u>Introduction</u>

On November 4, 2014, this Court entered a preliminary injunction which enjoined De-

fendants Moser, Hamilton, and Lumbreras "from enforcing or applying Article 15, § 16 of the

Kansas Constitution and K.S.A. § 23-2501 and any other Kansas statute, law, policy, or practice

that prohibits issuance of a marriage license to same-sex couples." Memorandum and Order,

2014 U.S. Dist. LEXIS 157093 (D. Kan. Nov. 4, 2014), Doc. 29, p. 38.  In so ruling, the Court

concluded that "plaintiffs have shown a strong likelihood that they will succeed in establishing

that Article 15, § 16 of the Kansas Constitution and K.S.A. § 23-2501 violate their rights guaran-

teed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Unit-

ed States Constitution." *Id.* at 33.  Significantly, the Court noted that Plaintiffs' Complaint alleg-

es "that Kansas' laws banning same-sex marriage are ones that are unconstitutional on their face

(as opposed to a claim challenging the way that Kansas has applied those laws to them)," and

"[i]f plaintiffs succeed in establishing no circumstances exist under which Kansas could apply its

same-sex marriage ban permissibly, the Court may invalidate the laws in their entirety." *Id.* at 13.

The Court further found that the other pertinent factors in the preliminary injunction calculus weighed in favor of granting a preliminary injunction on Plaintiffs' marriage license claims. *Id.*, pp. 35-36. Although the District Court stayed its injunction for one week so that the Defendants could seek a stay from a higher court, both the Tenth Circuit and the United States Supreme Court denied the Defendants' requests for a further stay. *See Moser v. Marie*, 190 L. Ed. 2d 385, 83 U.S.L.W. 3304, 2014 U.S. LEXIS 7651 (Nov. 12, 2014). Thus, on November 12, 2014, the District Court's preliminary injunction went into effect, and the Kansas district court clerks in Douglas, Sedgwick, and many other Counties around the State began issuing marriage licenses to same-sex couples. Phil Anderson, "Two Topeka pastors welcome same-sex marriages: Court rulings will open the door to same-sex marriages in Topeka," *Topeka Capital-Journal* (Nov. 13, 2014), available at http://cjonline.com/news/2014-11-13/two-topeka-pastors-welcome-same-sex-marriages (last checked Dec. 4, 2014).

Despite those events, however, various State agencies are continuing to refuse to recognize same-sex marriages based on the provisions of Article 15, § 16 of the Kansas Constitution and K.S.A. § 23-2501 and other statutes, laws, policies, and practices. Thus, on November 26, 2014, Plaintiffs filed a First Amended Complaint, in which they added additional Plaintiffs and Defendants in order to bring the non-recognition issue before the Court. Now, Plaintiffs seek a further order of the Court enjoining Defendants Jordan, Kaspar, and Michael, in their official capacities – as well as any officers, agents, servants, employees, attorneys, other persons who are in active concert or participation with them – from continuing to

enforce Article 15, § 16 of the Kansas Constitution and K.S.A. § 23-2501 and other statutes, laws, policies, and practices prohibiting recognition of same-sex couples' marriages.

Facts

*The Recognition Plaintiffs*

1.      The newly added Plaintiffs are three same-sex couples (hereafter collectively referred to as "the Recognition Plaintiffs") – James E. Peters and Gary A. Mohrman, Carrie L. Fowler and Sarah C. Braun, and Darci Jo Bohnenblust and Colleen Hickman  – who have married in Iowa, Illinois, and Kansas, respectively. *See* Declaration of James E. Peters, ¶ 3; Declaration of Carrie L. Fowler, ¶ 3; and Declaration of Darci Jo Bohnenblust, ¶ 4.

*The State Income Tax Filing Status Claim against Defendant Jordan*

2.      Defendant Nick Jordan is the Secretary of the Kansas Department of Revenue (hereafter "KDOR").  Defendant Jordan's duties include directing and supervising Kansas's Division of Taxation for Individuals.  The KDOR's Division of Taxation for Individuals is responsible for issuing regulations and guidance on issues pertaining to income taxation, including issues related to the filing status of same-sex married couples who file Kansas income tax returns.

3.      On October 4, 2013, the KDOR issued Notice 13-18, entitled "Guidance for Same-Sex Couples."  That document provides in relevant part that "Kansas only recognizes marriages between one woman and one man. (See Article 15, Section 16, of the Kansas Constitution.) Kansas Statutes Annotated (K.S.A. 79-32,115) provide that a husband and wife shall file a joint or married filing separate return for income tax purposes. Individuals of the same sex cannot file a Kansas income tax return using a tax status of married filing jointly or married filing separately." Attached as Exhibit 1, available on KDOR's website at

http://www.ksrevenue.org/taxnotices/notice13-18.pdf (last checked Dec. 4, 2014).  Notice 13-18

3

further provides that married same-sex couples must, instead, complete and file a special work-sheet when they have filed their federal income tax return as "married." *Id.*

4.      Plaintiffs Peters and Mohrman filed their 2013 federal income tax returns as "married, filing separately." Peters Decl., ¶ 10.  Because of the KDOR's refusal to allow married same-sex couples to file state income tax returns as "married filing jointly" or "married filing separately," Plaintiffs Peters and Mohrman had to prepare both married federal tax returns for federal filing purposes and single federal tax returns in order to prepare state single tax returns. *Id.*, ¶ 11.  The preparation of those multiple tax returns caused Plaintiffs Peters and Mohrman to expend additional time and resources that would not be required of different-sex couples. *Id.* They will face this same problem early in 2015, when preparing their income tax returns for calendar year 2014.  Many same-sex married couples in Kansas will face this same problem early in 2015.

*The Drivers' License Name Change Claim against Defendants Jordan & Kaspar*

5.      On information and belief, in his official capacity as the Secretary of KDOR, Defendant Jordan has ultimate managerial responsibility for the Division of Vehicles, which is a Division of KDOR and is responsible for issuing drivers' licenses to eligible Kansas residents and for reissuing drivers' licenses to spouses who change their last names as part of the marriage licensing process.

6.      On information and belief, Defendant Lisa Kaspar is the Director of the KDOR's Division of Vehicles, and Defendant Kaspar's duties include directing and supervising the employees and agents of the Division of Vehicles who are responsible for issuing drivers' licenses to eligible Kansas residents and for reissuing drivers' licenses to spouses who change their last names as part of the marriage licensing process.

4

7.     On her marriage license, as permitted by Illinois law, Plaintiff Carrie L. Fowler changed her last name from Fowler to Braun. Fowler Decl., ¶ 5.  Moreover, on their marriage license, as permitted by Kansas law, Plaintiffs Bohnenblust and Hickman designated new legal last names for themselves. Bohnenblust Decl., ¶ 6.  Plaintiff Bohnenblust designated Pottroff (her last name at birth) as her new last name, and Plaintiff Hickman designated Spain (her last name at birth) as her new last name. *Id.*

8.     After changing their names as part of the marriage licensing process, Plaintiffs Fowler, Bohnenblust, and Hickman were able to change their last names on their records at the Social Security Administration and to obtain  new Social Security cards listing their new last names.  Fowler Decl., ¶ 6; Bohnenblust Decl., ¶ 7.

9.     After their marriages, Plaintiffs Fowler, Bohnenblust, and Hickman went to drivers' license offices operated under the supervision of the Kansas Division of Vehicles, to attempt to obtain new driver's licenses in their new last names. Fowler Decl., ¶ 7; Bohnenblust Decl., ¶ 8. Clerks working at those offices told Plaintiffs Fowler, Bohnenblust, and Hickman that, because their marriages are not recognized in Kansas, the Division of Vehicles would not issue them new drivers' licenses in their new married last names.  *Id*.

10.     After district court clerks in Kansas began issuing marriage licenses to same-sex couples, Plaintiff Fowler called the Division of Vehicles' office in Lawrence to see if she would be able to get a new license in her married name, but the staff person who answered the telephone stated that, even though some district court clerks were issuing marriage licenses to same-sex couples, the Division of Vehicles does not recognize same-sex marriages. Fowler Decl., ¶ 8. Plaintiff Fowler then called the Division of Vehicles' Driver's Licensing telephone number in Topeka, Kansas, and was told that the Division had been instructed to follow the Kansas Consti-

5

tution and not to recognize same-sex marriages, including the marriage of Plaintiffs Fowler and Braun. *Id*.  The refusal to issue new driver's licenses has broader implications for same-sex married couples, with respect to tracking and verifying their driving records and automobile insurance coverage.

*The State Employee Spousal Health Insurance Claim against Defendant Michael*

11.    On information and belief, Defendant Mike Michael is the Director of the Kansas State Employee Health Plan ("KSEHP"), through which all state employees may obtain health insurance for themselves, their spouses, and their other dependents, and in that position Defendant Michael is responsible for implementing and administering the terms of the KSEHP and for advising staff of various state employer institutions and agencies regarding the terms and benefits of the KSEHP.

12.    The KSEHP provides participants with a booklet that explains the benefits and coverage of the Plan. Peters Decl., ¶ 6.  The booklet for the current Plan year is entitled "State Employee Benefits Guidebook – Plan Year 2015," and it was issued in October 2014. *Id*.  In a section entitled "Other Eligible Individuals Under the SEHP," the Guidebook explains that the KSEHP provides dependent coverage for "[y]our lawful wife or husband, referred to as 'spouse' throughout the rest of this guidebook.  (Same gender marriages are not recognized under Kansas Law)."  Peters' Decl., ¶ 6 & Decl. Ex. 1(copy of page 9 of the Guidebook, attached to Peters Decl.).

13.    Plaintiffs Peters and Bohnenblust are employed by the state universities in Kansas and are thus employees of the State of Kansas. Peters Decl., ¶ 5; Bohnenblust Decl., ¶ 9.  As state employees, Plaintiffs Peters and Bohnenblust are eligible for health insurance provided

through the KSEHP, and they both participate in the KSEHP for their health insurance coverage. *Id.*

14.    In November 2014, Plaintiffs Peters and Bohnenblust went to the human resources departments of their respective state employers and asked to add their spouses (Plaintiff Mohrman and Plaintiff Hickman, respectively) to their health insurance coverage as "spouses." Peters Decl., ¶ 7; Bohnenblust Decl., ¶ 10.

15.    The human resources representative told Plaintiff Peters that – pursuant to a directive from Defendant Michael – Plaintiff Mohrman could not be added as a dependent spouse because the State of Kansas does not recognize same-sex marriages. – The human resources representative then declined the request of Plaintiff Peters to add his husband, Plaintiff Mohrman, as a dependent spouse under the KSEHP. Peters Decl., ¶ 7.

16.    On November 22, 2014, Plaintiff Bohnenblust sent an e-mail to the human resources office at her employer, Kansas State University, in which she requested to add her wife, Plaintiff Hickman, as a dependent on the KSEHP, the health insurance policy that covers Plaintiff Bohnenblust. Bohnenblust Decl., ¶ 10.  In an e-mail dated November 24, 2014, a human resources representative told Plaintiff Bohnenblust that she could not add her spouse as a dependent on her health care benefits because Defendant Michael had advised Kansas State University that "same gender couples will remain ineligible" for spousal health care benefits under the KSEHP because Kansas law does not recognize same-sex marriages. *Id.*  Plaintiff Bohnenblust was thus unable to add her spouse, Plaintiff Hickman, as a dependent spouse under the KSEHP. *Id.*

<u>Argument</u>

The Recognition Plaintiffs now seek a preliminary injunction prohibting Defendants Jordan, Kaspar, and Michael, in their official capacities– as well as any officers, agents, servants, employees, attorneys, other persons who are in active concert or participation with any these Defendants  – from continuing to enforce Article 15, § 16 of the Kansas Constitution and K.S.A. § 23-2501 and other statutes, laws, policies, and practices prohibiting same-sex couples from marrying or denying recognition to their marriages and , requiring them to treat same-sex married people the same as any other married persons including – by way of illustration and without limitation – for purposes of filing individual state income tax returns, obtaining new driver's licenses in names changed as a result of the marriage licensing process, and adding same-sex spouses to state-employee health insurance coverage under the KSEHP.

A movant is entitled to a preliminary injunction if the movant can establish the following: (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.  *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012).  For injunctions seeking mandatory relief, the movant must make a "strong showing" with regard to the likelihood of success on the merits and with regard to the balance of harms. *Id*.  In light of binding precedent from *Kitchen* and *Bishop*, Plaintiffs easily meet these requirements.

I.     *Plaintiffs Have Made a Strong Showing They Are Substantially Likely To Succeed On The Merits*.

As the Court concluded with regard to the refusal to issue marriage licenses to same-sex couples, "plaintiffs have shown a strong likelihood that they will succeed in establishing that Ar-

ticle 15, § 16 of the Kansas Constitution and K.S.A. § 23-2501 violate their rights guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution." *Id.* at 33. The same is true with regard to the recognition claims.

Under binding Tenth Circuit precedent: "A state may not deny the issuance of a marriage license to two persons, *or refuse to recognize their marriage*, based solely upon the sex of the persons in the marriage union." *Kitchen v. Herbert*, 755 F.3d 1193, 1199 (10th Cir.) (emphasis added), *cert. denied*, 83 U.S.L.W. 3102 (U.S. Oct. 6, 2014). In *Kitchen* the Tenth Circuit squarely held that the fundamental right to marry necessarily includes the right to have one's marriage recognized. *Id.* at 1213.

As this Court previously recognized, "Kansas' same-sex marriage ban does not differ in any meaningful respect from the Utah . . . laws the Tenth Circuit found unconstitutional," and "[b]ecause Tenth Circuit precedent is binding on this Court, *Kitchen* . . . dictate[s] the result here." Memorandum and Order, 2014 2014 U.S. Dist. LEXIS 157093 (D. Kan. Nov. 4, 2014), Doc. 29, p. 33. *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10thCir. 1990) ("A district court must follow the precedent of this circuit"); *Phillips v. Moore*, 164 F. Supp. 2d 1245, 1258 (D. Kan. 2001) ("The [district] court, of course, is bound by circuit precedent") (citing *Spedalieri)*.

Moreover, as this Court noted in its earlier decision, Plaintiffs have made a strong showing that the challenged provisions are not merely unconstitutional as applied to them, but unconstitutional in all their applications:

> The Court construes plaintiffs' Complaint to allege that Kansas' laws banning same-sex marriage are ones that are unconstitutional on their face (as opposed to a claim challenging the way that Kansas has applied those laws to them). A claim is a facial challenge when "it is not limited to plaintiffs' particular case, but challenges application of the law more broadly." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010). If plaintiffs succeed in estab-

lishing no circumstances exist under which Kansas could apply its same-sex mar-
riage ban permissibly, the Court may invalidate the laws in their entirety, includ-
ing their application to male, same-sex couples. *Doe v. City of Albuquerque*, 667
F.3d 1111, 1127 (10th Cir.2012) ("[A] successful facial attack means the statute is
wholly invalid and cannot be applied to anyone.") (quoting *Ezell v. City of Chica-
go*, 651 F.3d 684, 698–99 (7th Cir.2011))

Memorandum and Order, 2014 2014 U.S. Dist. LEXIS 157093 (D. Kan. Nov. 4, 2014), Doc. 29,

pp. 12-13.

II.    *Plaintiffs Will Suffer Irreparable Harm If A Preliminary Injunction Does Not Issue*.

There is no question that Plaintiffs suffer irreparable harm every day that Kansas's un-

constitutional marriage recognition bans remain in force.  Deprivation of constitutional rights

"for even minimal periods of time, unquestionably constitutes irreparable harm." *Elrod v. Burns*,

427 U.S. 347, 373 (1976); *see also Awad*, 670 F.3d at 1131 ("Furthermore, when an alleged con-

stitutional right is involved, most courts hold that no further showing of irreparable injury is nec-

essary.") (citation omitted); *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) ("[W]hen re-

viewing a motion for preliminary injunction, if it is found that a constitutional right is being

threatened or impaired, a finding of irreparable injury is mandated."); *Quinly v. City of Prairie

Village*, 446 F.Supp.2d 1233, 1237-38 (D. Kan. 2006) (same).

Kansas's treatment of Recognition Plaintiffs' relationships as lesser than the relationships

of opposite-sex couples whose marriages are recognized stigmatizes and demeans the marriages

of the Recognition Plaintiffs and all other married same-sex couples in Kansas, causes them anx-

iety and stress, and harms their dignity as individuals and as couples.  As recognized by the

Tenth Circuit, laws that treat same-sex couples as lesser than opposite-sex couples for purposes

of marriage recognition "impose[] a disadvantage, a separate status, and so a stigma upon all

who enter into same-sex marriages." *Kitchen*, 755 F.3d at 1207 (quoting *Windsor*, 133 S. Ct. at

2963). Laws that discriminate against same-sex couples undermine "both the public and private significance" of same-sex couples' relationships by telling those couples, and all the world, that their marriages are unworthy of recognition. *Kitchen*, 755 F.3d at 1207 (quoting *Windsor*, 133 S. Ct. at 2964). Such laws "'humiliate[] . . . children now being raised by same-sex couples' by making 'it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives.'" *Kitchen*, 755 F.3d at 1207 (quoting *Windsor*, 133 S. Ct. at 2964). With the passage of each day, these harms accumulate.

The harms to Plaintiffs' dignity that result from being deprived of state recognition of this most important relation should be considered particularly irreparable because monetary damages cannot adequately compensate for such harms. *See Awad*, 670 F.3d at 1131; *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1251 (10th Cir. 2001). "[D]iscrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group." *Heckler v. Mathews*, 465 U.S. 728, 739-740 (1984);

Moreover, even financial harms caused by the exclusion of same-sex spouses from KSEHP are irreparable because the Eleventh Amendment protects Kansas and any State officials in their official capacity from liability for damages.  *See Edelman v. Jordan*, 415 U.S. 651 (1974).  The legal protection to Plaintiffs and other families of Kansas State employees is an injunction to prevent further harm from accruing.

III.     *The Harm To Plaintiffs Substantially Outweighs Any Harm To The Defendants.*

As this Court held regarding the marriage license issue, "Tenth Circuit precedent requires the Court to conclude that the balance of harm analysis favors injunctive relief." Doc. 29, p. 36. The same is true with regard to the marriage recognition claims.

IV.     *Injunctive Relief Is In The Public Interest.*

In its decision on the marriage license issue, this Court concluded that "the public interest favors protecting plaintiffs' constitutional rights by enjoining Kansas' plainly unconstitutional provisions." Doc. 29, p. 36.  The Kansas ban on recognition of same-sex marriages performed in Kansas and elsewhere is plainly unconstitutional.  Thus, injunctive relief to block enforcement of the recognition bans would serve the public interest.

Injunctive relief is particularly necessary to dispel any confusion caused by the actions of Kansas officials in attempting to limit the effect of this Court's earlier ruling.  For example, even though the Tenth Circuit held that none of the plaintiffs in *Bishop* had standing to challenge Oklahoma's recognition ban, Oklahoma officials now recognize as valid same-sex marriages performed in Oklahoma and elsewhere in light of the Tenth Circuit precedent in *Kitchen*.  *See* eCapitol & Shawn Ashley, *State Begins Offering Benefits To Same-Sex Couples*, KGOU (Oct. 9, 2014), available online at http://kgou.org/post/state-begins-offering-benefits-same-sex-couples. Oklahoma's approach stands in sharp contrast to the refusal of Kansas' government officials to apply this Court's earlier ruling in the recognition context.  *See* "Kansas Agencies Not Recognizing Gay Marriages Yet," *Lawrence Journal-World* (Nov. 20, 2014), available on-line at http://www2.ljworld.com/news/2014/nov/20/kansas-agencies-not-recognizing-gay-marriages-yet/.

12

It is in the public interest for the Court to make clear that Kansas State officials must cease enforcing the State's marriage bans in any and all contexts.

<u>CONCLUSION</u>

Plaintiffs are overwhelmingly likely to succeed on the merits of their constitutional claims and are suffering significant and irreparable harm every day that Kansas refuses to recognize the marriages of same-sex married couples.  The balance of equities strongly favors an injunction, and an injunction is in the public interest. Accordingly, Plaintiffs respectfully request that the Court issue a preliminary injunction:

(1) enjoining Defendants Nick Jordan, Lisa Kaspar, and Mike Michael, in their official capacities – as well as all officers, agents, servants, employees, attorneys, other persons who are in active concert or participation with them – from enforcing article 15, section 16 of the Kansas Constitution, Kansas Statutes Annotated §§  23-2501 and 23-2508, and any other sources of state law to refuse recognition of the marriages of same-sex couples whether performed in Kansas or elsewhere, and (2) requiring Defendants Nick Jordan, Lisa Kaspar, and Mike Michael, in their official capacities – as well as all officers, agents, servants, employees, attorneys, other persons who are in active concert or participation with them – to treat same-sex married people the same as any other married persons including:

(a)   requiring Defendant Jordan, in his official capacity – and all officers, agents, servants, employees, attorneys, other persons who are in active concert or participation with him – to recognize marriages validly entered into in Kansas and elsewhere by same-sex couples for purposes of filing individual state income tax returns in a "married" status;

(b)   requiring Defendants Jordan and Kasper in their official capacities – and all officers, agents, servants, employees, attorneys, other persons who are in active concert or par-

ticipation with them – to recognize marriages validly entered into in Kansas and else-

where by same-sex couples for purposes of issuing new drivers' licenses to married

same-sex spouses who change their names as part of the marriage licensure process;

and

(c)    requiring Defendant Michael in his official capacity – and all officers, agents, servants,

employees, attorneys, other persons who are in active concert or participation with him

– to recognize marriages validly entered into in Kansas and elsewhere by same-sex

couples for purposes of allowing employees covered by the Kansas State Employees

Health Plan ("KSEHP") to add their same-sex spouses as dependents covered by the

KSEHP.

Plaintiffs request such injunction remain in effect until entry of final judgment in this ac-

tion.

Respectfully submitted,

/s/ Stephen Douglas Bonney
Stephen Douglas Bonney, KS Bar No. 12322
ACLU Foundation of Kansas
3601 Main Street
Kansas City, MO 64111
Tel. (816) 994-3311 Fax: (816) 756-0136
dbonney@aclukansas.org

Mark P. Johnson, KS Bar #22289
Dentons US, LLP
4520 Main Street, Suite 1100
Kansas City, MO  64111
816/460-2400
816/531-7545 (fax)
Mark.johnson@dentons.com

Joshua A. Block [admitted pro hac vice]
ACLU FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2593
jblock@aclu.org

ATTORNEYS FOR PLAINTIFFS

Certificate of Service

I certify that, on December 8, 2014, the foregoing document was served on counsel for Defendants Moser, Hamilton, and Lumbreras by e-mail through the Court's ECF system, and First Class Mail, postage prepaid, on the following:

Nick Jordan, Secretary of Dept. of Revenue
Docking State Office Building
915 S.W. Harrison Street, 2nd Floor
Topeka, KS 66612

Lisa Kaspar, Director
Dept. of Revenue, Division of Vehicles
915 S.W. Harrison Street
Topeka, KS 66612

Mike Michael, Director
State Employee Health Plan
Curtis State Office Building
1000 S.W. Jackson
Topeka, Kansas 66612

/s/ Stephen Douglas Bonney