## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

KAIL MARIE et al.,

       Plaintiffs,

v.

ROBERT MOSER, M.D. et al.,

       Defendants.

**Case No. 14-cv-02518-DDC/TJJ**

## MEMORANDUM AND ORDER

Westboro Baptist Church ("WBC") has filed a Renewed Motion to Intervene as a defendant in this case (Doc. 53). WBC filed its first Motion to Intervene on October 26, 2014 (Doc. 19). And though the Court denied that motion (Doc. 35), it invited WBC to file an amicus brief. On November 22, 2014, plaintiffs filed their First Amended Complaint (Doc. 52), which includes new plaintiffs, new defendants, and asserts marriage recognition claims. WBC filed its Renewed Motion to Intervene in response to plaintiffs' First Amended Complaint. None of the existing parties filed a response to WBC's Renewed Motion to Intervene within the time limits imposed by D. Kan. Rule 6.1(d)(1). Thus, WBC's motion is ripe for ruling. After considering the arguments contained in its motion, the Court denies WBC's Renewed Motion to Intervene for the reasons explained below.

## Analysis

WBC is an independent church located in Topeka, Kansas. For nearly 25 years, WBC members have engaged in picketing, protesting, and other visible forms of public testimony against what they consider to be the "proud ruinous sins of this generation," including homosexuality. WBC asserts an interest in preventing the State of Kansas from affording

respect, dignity, and social approval to same-sex marriages.  It also claims an interest in preventing the state of Kansas from requiring it to participate in and honor same-sex marriages.

### A.  Plaintiff's First Amended Complaint

On November 26, 2014, plaintiffs filed their First Amended Complaint, which added the following six plaintiffs.  James Peters and Gary Morhman are a same-sex couple residing in Douglas County, Kansas.  Mr. Peters and Mr. Morhman have been in a relationship for more than thirty years and entered a same-sex marriage under the laws of Iowa in 2010.  Carrie Fowler and Sarah Braun are a same-sex couple residing in Jefferson County, Kansas.  In June 2014, they entered into a same-sex marriage under the laws of Illinois.  Darci Jo Bohnenblust and Joleen Hickman are a same-sex couple residing in Riley County, Kansas.  On November 13, 2014, Ms. Bohnenblust and Ms. Hickman received a marriage license in Riley County, Kansas and married during a ceremony performed that same day.

Plaintiffs also named three new defendants in their First Amended Complaint:  Nick Jordan, Secretary of the Kansas Department of Revenue; Lisa Kaspar, Director of the Kansas Department of Revenue's Division of Motor Vehicles; and Mike Michael, Director of Kansas' State Employee Health Plan.  Plaintiffs presumably added the new parties to address standing issues on their broadened claims.  In particular, they have added plaintiffs who claim to have standing to seek recognition of out-of-state same-sex marriages and defendants who arguably occupy state government positions responsible for administering the collateral rights and benefits that Kansas gives to couples in legally recognized marriages.

WBC argues that the First Amended Complaint confirms the theme of its original Motion to Intervene—namely, that same-sex marriage plaintiffs will continue to litigate until the rights they assert "lap over onto the churches of Kansas, including WBC," and until same-sex couples

"get the official sanction of the religious pillar of society."  WBC argues that such an outcome would amount to an impairment of its protectable interest in religious expression, and, accordingly, it seeks to intervene as a defendant in this lawsuit under Fed. R. Civ. P. 24(a) and (b).

### B.  Intervention of Right

Rule 24 recognizes two types of intervention:  intervention as a matter of right and permissive intervention.  Intervention as a matter of right under Rule 24(a) is mandated when a federal statute gives the applicant an unconditional right to intervene or when the applicant satisfies each of four conditions:  (1) the applicant has moved for intervention timely; (2) the applicant has a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant is situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest is not represented adequately by existing parties.  *Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 90 (10th Cir. 1993).  "Failure to satisfy any one of the requirements is fatal to the application, and [the Court] need not reach the remaining elements if one of the elements is not satisfied."  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).  When it ruled on the first Motion to Intervene, the Court concluded that WBC had failed to carry its burden to show that the current defendants would not represent WBC's interest adequately, and, therefore, denied the motion without reaching the remaining factors.  The Court concludes WBC has failed to show that this action has changed in a way that justifies a different ruling on its Renewed Motion to Intervene.

When this Court denied WBC's first Motion to Intervene, it found that the ultimate objectives of the existing defendants and WBC are the same—both seek to uphold Kansas'

constitutional and statutory prohibitions against same-sex marriage.  The Court noted that when a prospective intervenor shares an ultimate objective with the existing parties, a presumption of adequate representation arises.  *Hodes & Nauser, MDs, P.A. v. Moser*, No. 2:11-CV-02365-CM-KMH, 2011 WL 4553061, at *3 (D. Kan. Sept. 29, 2011).  The prospective intervenor must overcome this presumption by making a "compelling showing" to the contrary, which, the Court concluded, WBC had failed to do.  WBC now makes several new arguments that the new claims and parties in the First Amended Complaint present new circumstances and they require the Court to permit WBC to intervene.

First, WBC clams that plaintiff's Amended Complaint presents a possibility of a broad continuum of outcomes, over which WBC and the existing defendants' interests might diverge.  WBC presumably makes this argument because the Court distinguished *New Mexico Off-Highway Vehicle Alliance v. United States Forest Serv. ("NMOHVA")*, 540 F. App'x 877, 878 (10th Cir. 2013) on this basis when it denied WBC's first Motion to Intervene.

> [I]n *NMOHVA*, there existed the possibility that the district court would enjoin or modify the Travel Management Plan only in part.  *Id.* at 881-82.  Here, there is not a continuum of possible outcomes along which WBC's interest and the existing defendants' interest may diverge.  Rather there are only two possible outcomes:  either the Court permits Kansas to continue enforcing its same-sex marriage ban, or the Court enjoins Kansas from enforcing the ban.  WBC and the existing defendants both seek the former result.

Doc. 35 at 6.  WBC has not persuaded the Court that this case is any more similar to *NMOHVA* simply because plaintiffs have added recognition claims.  The scope of relief sought by plaintiffs may have expanded, but there are still only limited outcomes that could result from this litigation:  either the defendant state agencies must recognize plaintiff's same-sex marriages, or they may continue to enforce Kansas' prohibition on recognizing same-sex marriages.  As the

Court explains below, none of the possible outcomes are ones that require WBC to intervene to protect its interest in freely exercising its religious beliefs.

Moreover, WBC's argument for intervention as a matter of right does not rely on the issues at stake in the current litigation. Instead, their arguments focus on issues that might be at stake if same-sex couples continue to litigate civil rights claims based on sexual orientation. WBC relies primarily on the argument that plaintiffs, by amending their Complaint to include recognition claims, have confirmed WBC's concern that same-sex marriage proponents will "not rest until local and state government is largely occupied with meeting their demands and satisfying their needs." Doc. 53 at 3. The "highly likely" result of the expanding scope of this litigation, WBC argues, is that plaintiffs eventually "will include claims that the government should require all churches to marry them upon demand" and, therefore, "WBC is entitled to assert its interests to be protected from being forced to participate in this soul-crushing nation-destroying state-bankrupting sin." Doc. 53 at 9.

The Court need not speculate about the course of this litigation or the prospects of additional litigation because the adequacy of representation element "is to be determined by a litigation's condition at the time of the application to intervene." *Pierson v. United States*, 71 F.R.D. 75, 80 (D. Del. 1976) (citation omitted). Based on the case's current state, the Court finds that existing defendants who seek to uphold Kansas same-sex marriage and recognition bans adequately represent WBC's interest on the issues currently before the Court.

Next, WBC challenges the Kansas Attorney General's capability and willingness to represent its interest in this case. WBC claims that the Kansas Attorney General can no longer represent WBC's interest in this litigation because of his "apparently waning interest in these new issues." WBC worries that this will be like other same-sex marriage litigation where the

state has declined to defend its laws vigorously. The Court finds no basis for this concern.

Counsel from the Kansas Attorney General's Office submitted extensive briefing before the

preliminary injunction hearing (Docs. 14, 15) and had continued to conduct additional research

and formulate arguments up until the morning of the preliminary injunction hearing (Doc. 24).

After the Court issued the order granting a preliminary injunction, defendants appealed the order

to Tenth Circuit (Doc. 30), and to the United States Supreme Court (Docs. 41, 42). Far from

showing a "waning interest," the record reflects that the Kansas Attorney General's Office has

advanced substantive arguments in defense of the challenged laws and exhausted all procedural

mechanisms for appealing the preliminary injunction. In short, the Kansas Attorney General's

Office has discharged its statutory duty to defend these laws from constitutional challenge

vigorously. *See* K.S.A. § 75-702. Accordingly, the Court declines to conclude that existing

defendants lack the willingness or ability to represent WBC's interest adequately.

WBC cites the Tenth Circuit's decision in *Kitchen v. Herbert*, 755 F.3d 1193, 1227 (10th

Cir. 2014) to support its claim for intervention as a matter of right. *Kitchen* suggests, WBC

argues, that religious organizations should not wait until the threat of someone asserting a legal

duty to perform same-sex marriages exists (or otherwise recognize same-sex marriage within

their ministries) "is on their doorstep before they could seek relief," or that they must "pursue

separate litigation" to assert their rights. Doc. 53 at 10. WBC cites the following passage from

*Kitchen*:

> We also emphasize, as did the district court, that today's decision relates solely to
> civil marriage . . . [R]eligious institutions remain as free as they always have been
> to practice their sacraments and traditions as they see fit . . . we continue to
> recognize the right of the various religions to define marriage according to their
> moral, historical, and ethical precepts. Our opinion does not intrude into that
> domain or the exercise of religious principles in this arena. The right of an
> officiant to perform or decline to perform a religious ceremony is unaffected by
> today's ruling.

755 F.3d at 1227.  In the Court's judgment, WBC's interpretation of this passage is simply mistaken.

Here, the Tenth Circuit was clarifying that its ruling entitling same-sex to civil marriage rights did not make any determinations about laws governing the exercise of religious beliefs about marriage.  *Id.*  "'[N]o religious organization will have to change its policies to accommodate same-gender couples, and [] no religious clergy will be required to solemnize a marriage in contravention of his or her religious beliefs.'"  *Id.* (quoting *Griego v. Oliver*, 316 P.3d 865, 871 (N.M. 2013)).  As the Tenth Circuit demonstrated in *Kitchen*, a court can adjudicate claims for civil marriage rights without deciding religious organizations' free exercise rights.  WBC's free exercise rights likewise are not presently at issue in this case.  WBC's unabashed and unsupported speculation that the future litigation objectives of same-sex marriage advocates might, someday, implicate its free expression rights does not mean that WBC has a significant protectable interest currently.

The remaining arguments asserted by WBC only describe how the arguments it would make to the Court differ from those advanced by existing defendants.  The Court already considered this argument when it denied WBC's first Motion to Intervene and rejected it:

> In sum, the differences in interests that WBC identifies only amount to differences in *arguments* that WBC would like to assert.  This is an insufficient basis to conclude WBC's interests are not adequately represented by the existing defendants.  An applicant for intervention by a party who wishes only to assert different arguments than the government can do so just as effectively by participating as an amicus curiae.  *San Juan Cnty.*, 503 F.3d at 1206 (citing *Maine v. Director, U.S. Fish & Wildlife Service,* 262 F.3d 13, 18-20 (1st Cir. 2001) (affirming denial of intervention where prospective intervenors would present an argument that the government was highly unlikely to make because they could present the arguments in capacity of amicus curiae).

Doc. 35 at 6.  The Court again concludes the likelihood of WBC asserting different arguments than those asserted by existing defendants is an insufficient basis to conclude the existing

defendants do not adequately represent WBC's interests.  If WBC has arguments it would like the Court to consider, it may assert them in an amicus brief.  In sum, WBC has failed to show that plaintiffs' new claims require the Court to change its conclusion that WBC is not entitled to intervention as a matter of right.

### C. Permissive Intervention

WBC also seeks permissive intervention.  Under Fed. R. Civ. P. 24(b), the Court, in its discretion, may permit an applicant to intervene if the applicant "is given a conditional right to intervene by federal statute" or "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(A)-(B); *Arney v. Finney,* 967 F.2d 418, 421 (10th Cir. 1992) ("Permissive intervention is a matter within the sound discretion of the district court."  (quotations omitted)).

The Court originally declined to grant permissive intervention because it concluded that allowing WBC to intervene with full-party status would clutter the litigation without providing any compensating benefit to the Court or the parties.  WBC claims it has particular experience litigating constitutional issues, having asserted the rights of dissenting religious voices throughout the country and before the Supreme Court of the United States.  This expertise, WBC contends, will assist the Court in resolving the unique constitutional questions presented in this case.

WBC may have extensive experience litigating their rights to free exercise of religion. But as the Court explained above, plaintiffs here only seek the right to marry and the right to have the state recognize their marriages as valid.  These claims only affect marriage in the civil—not the religious—realm.  Any expertise it holds, therefore, is not germane to the claims now before the Court.  Moreover, WBC's filings reflect a desire to litigate controversies that do

not share common questions of fact or law with the claims in this case.  Those filings confirm the Court's concern that affording WBC full-party status would clutter the litigation without aiding the Court or the parties' ability to resolve the issues that are actually before the Court.  As a result, the Court, in its discretion, declines to allow WBC to intervene permissively.

The Court will permit WBC to retain its status as amicus curiae in this case.  WBC may continue to file amicus briefs asserting the arguments it would like the Court to consider.  This approach will permit WBC to present its arguments to the Court while avoiding the procedural compilations that come with granting full-party status.

**IT IS THEREFORE ORDERED BY THE COURT THAT** that WBC's Renewed Motion to Intervene under Fed. R. Civ. P. 24(a) and (b) is denied (Doc. 53).  The Court also denies WBC's request for oral argument on their Motion to Intervene because it has presented its argument comprehensively and effectively in its motion papers.  If WBC wishes to file an amicus brief with the Court on any future motions, it must do so by filing it on defendants' due date, as it applies to that motion.  The amicus briefs shall conform to D. Kan. Rule 7.6.

**IT IS SO ORDERED.**

**Dated this 18th day of December, 2014, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**\
**Daniel D. Crabtree**\
**United States District Judge**