**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KAIL MARIE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 14-cv-02518-DDC/TJJ |
| SUSAN MOSIER, M.D., in her official capacity as Interim Secretary of the Kansas Department of Health and Environment, *et al.*, | ) ) ) |
| | ) |
| Defendants. | ) |

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION OF
DEFENDANTS JORDAN, KASPAR, AND MICHAEL TO DISMISS

On January 20, 2015, Defendants Jordan, Kaspar, and Michael (hereafter "the Recognition Defendants") moved to dismiss the First Amended Complaint (Doc. 52) that Plaintiffs filed on November 26, 2014. Defendants' Motion, Doc. 79.  Defendants contend that the Court should dismiss because: (1) Plaintiffs' "claims relating to names on drivers' licenses" and the administration of the Kansas State Employee Health Plan "do not state a federal question and are barred by the Eleventh Amendment;" (2) Plaintiffs' "claims relating to recognition of out-of-state marriages do not state a federal question and are barred by Section 3 of the Defense of Marriage Act;" and (3) Plaintiffs' "claims relating to personal income taxes are barred by the Eleventh Amendment, by the Tax Injunction Act and/or by principles of comity." Defendants' Motion at 2.  Plaintiffs will address each of these arguments in turn.

**1. The Court has subject matter jurisdiction over Plaintiffs' claims against the Recognition Defendants.**

The Recognition Defendants argue that "[t]he First Amended Complaint sets forth no cognizable federal cause of action[.]" Defendants' Motion at 4.  Specifically, Defendants contend that "[t]he liberty protected by the Fourteenth Amendment does not include the right to be

subjected to income taxation as a married person, or the right to receive health insurance benefits for an alleged spouse, or the right to choose the name that appears on a drivers' license." *Id.*

Contrary to the jaundiced view of the Recognition Defendants, the Recognition Plaintiffs[1] are not advancing arguably trivial claims such as, for instance, a "right to choose the name that appears on a drivers' license." They are claiming a right to equal protection   Specifically, although the Recognition Defendants allow opposite-sex married persons to use their marriage licenses to change names on driver's licenses, to add spouses to state employee health insurance, and to file state tax returns as married persons, the Recognition Defendants are refusing to recognize the marriages of the Recognition Plaintiffs for these purposes and are thus denying the Recognition Plaintiffs equal protection of the law.  These claims are the same kind of equal protection claims that plaintiffs Archer and Call brought and the Tenth Circuit upheld in *Kitchen v. Herbert*, 755 F.3d 1193, 1199 (10th Cir.), *cert. denied*, 135 S. Ct. 265 (2014).  "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'  Extending the benefits and protections of a civil society to some but not all similarly situated families violates this critical guarantee." *Id.*, at 1222, quoting from *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Because "the right to marry is a fundamental liberty, plaintiffs will prevail on their due process and equal protection claims unless [defendants] can show that [Kansas' laws banning the recognition of same-sex marriages] survive[] strict scrutiny." *Kitchen*, 755 F.3d at 1218.

Because the Court clearly has subject matter jurisdiction over the Equal Protection Claims advanced by the Recognition Plaintiffs, the Court should deny Defendants' motion to dismiss based on an alleged absence of a federal question.

---

[1] James E. Peters, Gary A. Mohrman, Carrie L. Fowler, Sarah C. Braun, Darci Jo Bohnenblust, and Joleen M. Hickman. First Amended Complaint, Doc. 52, ¶¶ 8-10 & 30-48.

**2. Eleventh Amendment immunity does not apply.**

As the other Defendants have done in previous papers and motions to dismiss, the Recognition Defendants contend that Eleventh Amendment immunity applies and requires dismissal of the Recognition Plaintiffs' claims. Defendants' Motion at 8-10.  Defendants first argue that "[s]ince there is no federal right to interstate recognition of same-sex marriages, the *Ex parte Young* [209 U.S. 123 (1908)] exception cannot apply to these claims." *Id*. at 9.  Defendants rest this argument on 28 U.S.C. § 1738C, also known as Section 2 of the federal Defense of Marriage Act ("DOMA").[2]  Defendants also argue that "the *Ex parte Young* exception does not apply and the Eleventh Amendment bars relief" because Plaintiffs' recognition claims seek money damages. Defendants' Motion at 9.

As Defendants correctly note, "Plaintiffs have not challenged the constitutionality of 28 U.S.C. § 1738C." *Id.* at 10.  Plaintiffs have not challenged Section 2 of DOMA because it is a permissive statute and has nothing to do with this case. *See Bishop v. U.S. ex rel. Holder*, 962 F.Supp.2d 1252, 1266 (N.D. Okla.) ("Section 2 is an entirely permissive federal law"), *aff'd sub nom*, *Bishop v. Smith*, 760 F.3d 1070 (10th Cir.), *cert. denied*, 135 S. Ct. 271(2014); *Bourke v. Beshear*, 996 F. Supp.2d 542, 547 n. 9 (W.D. Ky. 2014) (refusing to analyze constitutionality of Section 2 of DOMA), *rev'd on other grounds*, *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), *cert. granted*, 2015 U.S. LEXIS 618 (2015).  As the district court in *Bishop* noted, "Section 2 does not remove any local, independent discretion and is not a fairly traceable cause of the Barton couple's non-recognition injury." 962 F. Supp.2d at 1266.  Because "[t]he injury of non-recognition stems exclusively from state law . . . and not from . . . federal law," *id*., Plaintiffs'

---

[2] 28 U.S.C. § 1738C provides as follows: "No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the

challenges to the actions of the Recognition Defendants in refusing to recognize same-sex marriages stand on their own and do not depend on the constitutionality of DOMA. In fact, including a challenge to the constitutionality of Section 2 of DOMA would inject an irrelevant issue into this litigation and would distract the Court from the real equal protection issue at stake in this case. Recognition Defendants would have the Court expend its time and resources on this red herring; Recognition Plaintiffs will not.

More importantly, "DOMA is not a barrier to Plaintiffs' claims that [Kansas's ban] is unconstitutional because it denies recognition to out-of-state same-sex marriages." *De Leon v. Perry*, 975 F. Supp. 2d 632, 661 (W.D. Tex. 2014). That is so "because whatever powers Congress may have under the Full Faith and Credit Clause, 'Congress does not have the power to authorize the individual States to violate the Equal Protection Clause.'" *Bradacs v. Haley*, 2014 WL 6473727, at *10, 2014 U.S. Dist. LEXIS 162184, at *26-27 (D.S.C. Nov. 18, 2014), quoting *Graham v. Richardson*, 403 U.S. 365, 382 (1971). Thus, the fact that Plaintiffs have not challenged Section 2 of DOMA has no effect on the equal protection claims advanced in this case.

Contrary to Defendants' arguments, moreover, the Recognition Plaintiffs' equal protection claims regarding state income tax filing status and state employee health insurance spousal benefits are not claims for money damages. The Recognition Plaintiffs are not seeking any monetary payments for past tax overpayments or unpaid health insurance claims. They seek only prospective relief. Thus, the state treasury is not at risk in this case, and a judgment in favor of Plaintiffs in this case would not "be tantamount to an award of damages against the State of Kansas." *Bock Assoc. v. Chronister*, 951 F. Supp. 969, 972 (D. Kan. 1996). *Bock*, upon which Defendants rely, was an action by a state contractor for compensation the Kansas Department of

---

same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship."

Social and Rehabilitation Services allegedly owed for work plaintiff had done on the state Medicaid program. In that regard, the relief sought was clearly "tantamount to an award of damages against the State of Kansas" so that *Bock* is easily distinguishable from this case.

For these reasons, Defendants' arguments based on DOMA and the Eleventh Amendment lack merit.

### 3. Neither the Tax Injunction Act nor comity bars the Court from hearing Plaintiffs' claim that prohibiting same-sex married couples from filing their state income tax returns as "married" denies them equal protection of the laws.

Defendant Jordon argues that "[t]he relief sought by plaintiffs Peters and Mohrman concerning the administration of Kansas' personal income tax laws is barred by the Tax Injunction Act, 28 U.S.C. § 1341 ('TIA'), . . . [because] [t]his lawsuit seeks to 'enjoin, suspend or restrain the assessment, levy or collection of any tax,' within the meaning of the [TIA]." Defendants' Motion at 10. Defendant Jordon further argue that the tax filing status claims are barred by principles of comity. *Id*. at 19-21.

As an initial matter, other federal courts, including the Tenth Circuit, have – without mentioning the TIA – affirmed that claims like the one advanced by Plaintiffs Peters and Mohrman are legitimate in marriage equality litigation. *See Bishop v. Smith*, 760 F.3d 1070, 1091 (10th Cir.), *cert. denied*, 135 S. Ct. 271(2014) (suggesting that non-recognition plaintiff could have established standing by suing members of the Oklahoma Tax Commission over denial of joint tax return filing status); *Baskin v. Bogan*, 2014 WL 2884868, at *4, *16, 2014 U.S. Dist. LEXIS 86114, at *15, *50 (S.D. Ind. 2014) (in granting summary judgment for plaintiffs, court found commissioner of the state department of revenue was a proper party and ordered him to permit same-sex couples to file joint tax returns), *aff'd*, 766 F.3d 648 (7th Cir.) 2014), *cert. denied sub nom*, *Walker v. Wolf*, 135 S. Ct. 316 (2014).

Defendant Jordan's attempt to invoke the TIA is plainly foreclosed by the Supreme Court's decision in *Hibbs v. Winn*, 542 U.S. 88, 93 (2004).  The TIA "prohibits a lower federal court from restraining 'the assessment, levy or collection of any tax under State law.'" *Hibbs*, 542 U.S. at 93.  However, "in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority.  Nowhere does the legislative history announce a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration." *Id.* at 104-105.  The Supreme Court "has interpreted and applied the TIA only in cases Congress wrote the Act to address, i. e., cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Id.* at 107.

In their claim against Defendant Jordan, Plaintiffs Peters and Mohrman do not contest their own tax liability; nor do they seek to impede Kansas's assessment, levy or collection of state income taxes from them or anyone else.  Instead, Plaintiffs Peters and Mohrman merely seek to enforce their constitutional right to equal protection of the law with respect to the manner in which their taxes are paid.  Specifically, Plaintiffs Peters and Mohrman want the State of Kansas to treat their marriage in the same way that the State treats opposite-sex marriages for purposes of state income tax filing; that is, they as a married couple want to be able to file their state income tax return jointly if they file their federal income tax return jointly.[3]  Thus, since they are

---

[3] Kansas law allows a "husband and wife" to file a joint Kansas income tax return, and – where such a married couple files a joint Kansas income tax return – the law provides that "the determination of Kansas taxable income shall, unless otherwise provided, be made as if husband and wife were one individual taxpayer." K.S.A. § 79-32,115(a).  The law further provides that, when "a husband and wife" file separate federal tax returns, "their Kansas taxable income shall be separately reported and taxed," K.S.A. § 79-32,115(b), and that, when "a husband and wife" file joint federal tax returns, "their Kansas taxable income shall be reported and taxed on the basis of a joint Kansas income tax return," K.S.A. § 79-32,115(c, d, & e).  "If neither husband or [*sic*] wife files a federal return, their Kansas taxable income shall be determined on a separate basis

not attempting to avoid payment of any state taxes, the TIA does not apply. *See Hibbs*, 542 U.S. at 107.  In interpreting the Anti-Injunction Act (AIA), 26 U.S.C. § 7421(a), upon which Congress modeled the TIA, *Hibbs* at 103, a three-judge court held that the AIA did not bar an action seeking to enjoin income tax exemptions to fraternal organizations that excluded nonwhites from membership because, in such cases, plaintiff "does not contest the amount of his own tax, nor does he seek to limit the amount of tax revenue collectible by the United States." *McGlotten v. Connally*, 338 F. Supp. 448, 453–454 (D.D.C. 1972) (footnote omitted).

The Recognition Defendants place heavy reliance on *Direct Marketing Ass'n v. Brohl*, 735 F.3d 904 (10th Cir. 2013), *cert. granted*, 134 S.Ct. 2901 (2014), in which the Tenth Circuit took a broad view of the TIA's scope.  The Supreme Court has granted certiorari to consider whether its approach is consistent with Congressional intent, but regardless of how the Supreme Court decides *Direct Marketing*, Defendants' TIA argument would still fail.  The plaintiffs in *Direct Marketing* challenged "notice and reporting obligations" that Colorado enacted "to increase taxpayers' compliance with use tax laws and thereby increase use tax collection."  *Id.* at 914; *see id.* (explaining that the "annual customer information reports sent to the Department, would aid the Department's auditing of taxpayers, a significant tax collection mechanism").   If the challenge succeeded, "the taxpayer would have continued to owe tax, but the state[] would have been deprived of the means to calculate and collect it."  *Id.*  The *Direct Marketing* panel therefore concluded that "[w]e have little problem concluding that [plaintiffs'] lawsuit would hamper Colorado's ability to raise revenue."  *Id.*  Unlike the claims in *Direct Marketing*, none of the claims in this case would have any impact on Kansas's ability to calculate and collect taxes, and none of the claims in this case would have any impact on Kansas's ability to raise revenue.

---

unless both elect to have their Kansas taxable income determined on the basis of a joint Kansas tax return." K.S.A. § 79-32,115(f).

Similarly, the comity doctrine also does not bar the Court from exercising jurisdiction in this case. "Comity . . . serves to ensure that 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.'" *Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323, 2336 (2010), quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971). In *Levin*, the Court held that comity required the federal courts to abstain from deciding plaintiff's challenge to unequal taxation of different types of natural gas sellers. In so doing, the Court distinguished *Levin* from *Hibbs*: First, the Court noted that *Levin* involved commercial matters over which states enjoy "wide regulatory latitude" and did "not involve any fundamental right or classification that attracts heightened judicial scrutiny." *Levin*, 130 S. Ct. at 2336. Second, the Court noted that plaintiffs were "in fact seeking federal-court aid in an endeavor to improve their competitive position." *Id.* Third, the Court noted that state "courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options." *Id*. Ultimately, the Court held that "[i]ndividually, these considerations may not compel forbearance on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process." *Id.* Comity does not require abstention in this case because this case does not involve commercial activities or any of the other factors on which the Court relied in *Levin*. Most importantly, this case directly involves a fundamental constitutional right – the right to marry – and that counsels in favor of the exercise of federal jurisdiction.

Neither Plaintiffs' equal protection claim nor the requested relief triggers the TIA's jurisdictional bar. Furthermore, comity does not require federal abstention. Thus, the Court should deny Defendant Jordon's motion to dismiss the tax-return claims based on the TIA and comity.

Conclusion

For these reasons, Plaintiffs respectfully request that the Court deny the Recognition Defendants' motion to dismiss.

Respectfully submitted,

/s/ Stephen Douglas Bonney
Stephen Douglas Bonney, KS Bar No. 12322
ACLU Foundation of Kansas
3601 Main Street
Kansas City, MO 64111
Tel. (816) 994-3311
Fax: (816) 756-0136
dbonney@aclukansas.org

Mark P. Johnson, KS Bar #22289
Dentons US, LLP
4520 Main Street, Suite 1100
Kansas City, MO  64111
816/460-2400
816/531-7545 (fax)
Mark.johnson@dentons.com

Joshua A. Block [admitted pro hac vice]
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2593
jblock@aclu.org

ATTORNEYS FOR PLAINTIFFS

Certificate of Service

I certify that, on February 6, 2015, the foregoing document was served on counsel for Defendants by e-mail through the Court's ECF system.

/s/ Stephen Douglas Bonney